**Helmut FRIETSCH, Horst Gerhard Hess, Manfred Schneider, Siegfried Koegler, and Martin Gerweck, individually and on behalf of all others similarly situated, et al., Plaintiffs–Appellants,**

v.

**REFCO, INCORPORATED, Stuart Trading Company, and William A. Stuart, III, Defendants–Appellees.**

No. 94–3778.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1995.

Decided June 7, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied July 12, 1995.*

---

not feel that it has been waived. *See Occidental Fire & Cas. Co. v. International Insurance,* 804 F.2d 983, 988 (7th Cir.1986).

* Hon. John C. Shabaz voted to grant the petition.

Edward T. Joyce, Arthur W. Aufmann (argued), Rowena T. Paras, Rowena T. Parma, Howard Brian Prossnitz, William D. Anthony, Jr., John E. Dolkart, Chicago, IL, for plaintiffs-appellants.

Roger Pascal, Paul E. Dengel (argued), Scott C. Tomassi, Schiff, Hardin & Waite, Thomas Bradley, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, James A. McGurk, McConnell & Mendelson, Chicago, IL, for defendants-appellees.

Before POSNER, Chief Judge, FLAUM, Circuit Judge, and SHABAZ, District Judge.**

POSNER, Chief Judge.

The plaintiffs, who are citizens and residents of Germany, brought this suit for federal securities fraud against Refco, a U.S. commodities broker headquartered in Chicago. (There are two other defendants, but we need not discuss them separately.) Refco moved to dismiss the suit on the ground that the forum selection clause in the plaintiffs' investment contracts made Germany the exclusive venue for any suit arising out of the contracts. The district judge granted the motion, precipitating this appeal.

The background to the dispute can be sketched briefly. Several years ago Refco agreed with several German businessmen to establish nine commodity pools as unincorporated associations in Germany. The businessmen owned three corporations, which became the promoters of the pools and in this capacity solicited Germans, through prospectuses printed in German, to invest in the pools. The management of the pools is in the hands of German trustees. The pools raised $35 million from several thousand German investors, who constitute the class on behalf of whom this suit is brought. The pools planned to trade commodities on U.S. commodity exchanges; that is why Refco had been involved in the creation of the pools. The pools signed brokerage agreements with Refco, and the prospectuses that the pools issued to prospective investors touted the employment of "the most respected brokerage firms" and noted that, "like all exchange transactions, all aspects of trading in so-called futures are closely regulated by law and ' supervised by government authorities. In the U.S., a special federal agency supervises the strict observance of these regulations." The complaint alleges—we must assume truthfully, of course without vouching for its truth—that the promoters and trustees were entirely controlled by Refco and that Refco's goal was to operate a Ponzi scheme. Unsophisticated investors would be enticed into investing in the commodity pools by false promises of low risk and high return, and the inevitable losses would be concealed by the use of money from new investors to pay the high returns promised to the old investors. The scheme collapsed in 1992 and this suit ensued.

The plaintiffs made their investments in the pool pursuant to contracts that they signed with both the promoters and the trustees. Each contract contained a clause providing that "place of jurisdiction ... is the registered office of the trustee, to the extent permissible under the law." That office is, of course, in Germany. Refco was not a party to either sort of contract. But its brokerage agreements with the pools contained a clause in which "the parties agree that all disputes, claims, actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Agreement and any related agreement shall be litigated at the discretion and election of Refco only in a court in Chicago, Illinois."

It might seem that neither forum-selection clause would be relevant to this suit: the one in the investment contracts because the suit is against a nonparty to them, Refco; the one in the brokerage contracts both because the suit does not arise out of those contracts and because they permit only Refco to invoke the clause and it is not doing so. Regarding the first point, courts in this country (the significance of this qualification will become clear shortly) enforce forum selection clauses in favor of non-parties "closely related" to a signatory. *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir.1993); *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir.1988). That is not an illuminating phrase; nor is recasting it as an issue of "foreseeability" much of a help. But these vague formulas can be given meaning by reference to the principle of mutuality. Rejected in recent times in areas of the law ranging from contract to collateral estoppel, the principle of mutuality retains undeniable appeal in regard to the scope of forum selection clauses. This case shows why. Suppose the plaintiffs wanted to sue Refco in Germany. Since the basis of their claim is that

** Hon. John C. Shabaz of the Western District of Wisconsin, sat by designation.

Refco totally controlled the promoters and trustees who are the nominal signatories of the investment contracts, the plaintiffs could argue as a justification for enforcing the forum selection clause in the investment contracts that the clause binds Refco as the secret principal of the signatories. See *Hodes v. S.N.C. Achille Lauro,* 858 F.2d 905, 912 (3d Cir.1988); *General Electric Co. v. Siempelkamp GmbH & Co.,* 809 F.Supp. 1306, 1310 (S.D.Ohio 1993), aff'd, 29 F.3d 1095 (6th Cir.1994); cf. *Certain Interested Underwriters at Lloyd's v. Layne,* 26 F.3d 39, 43 (6th Cir.1994); *Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir.1980) (per curiam); *Restatement (Second) of Agency* § 186 (1958). If so, mutuality requires that Refco be allowed to invoke the clause. Otherwise the plaintiffs would have a choice of venues but Refco would not, and there is no reason for such an asymmetry of procedural choices. All Refco is doing in invoking the forum selection clause to which it is not a party is accepting one of the premises of the plaintiff's suit—that the promoters and trustees are indeed simply cat's paws of Refco—and pointing out that the implication is that the investment contracts, including the forum selection clause, are really between the plaintiffs and Refco. So the plaintiffs would be arguing if they preferred to sue in Germany rather than the United States, as well they might, being German citizens.

The existence of mutuality would be pretty academic were it clear that the plaintiffs could sue Refco in Germany even without a forum selection clause. But we do not know whether Refco would be suable there, under the German equivalent of our long-arm statutes, apart from the forum selection clause.

■ Our analysis to this point has suggested that Refco is indeed "closely related," in the relevant sense, to the signatories of the forum selection clause contained in the investment contracts and is therefore entitled to invoke the clause. Against this conclusion the plaintiffs argue, first, that they could *not* have enforced the forum selection clause against Refco. They tell us that whatever the situation may be under American law, German law would not permit a nonparty to a contract containing a forum selection clause

to enforce the clause; and it would be German law that controlled if the plaintiffs were trying to sue in Germany. This argument is important not only for its bearing on the issue of mutuality and hence on Refco's right as a nonparty to the forum selection clause nevertheless to take advantage of it, but also because of the qualification that the clause is effective only "to the extent permissible under the law" of Germany. Unless the forum selection clause is enforceable against Refco, Refco might not be suable in Germany at all, in which event the clause by its own terms would authorize the plaintiffs to sue Refco elsewhere.

Critical as the argument is, we cannot consider it. The plaintiffs failed to lay the requisite foundation and have thus waived it. Granted, the meaning of foreign law is no longer treated as a strict question of fact to be proved in the same manner as other questions of fact, which is to say by sworn testimony and documents admissible under the rules of evidence. Fed.R.Civ.P. 44.1; *Twohy v. First National Bank,* 758 F.2d 1185, 1192–93 (7th Cir.1985); *United States v. Peterson,* 812 F.2d 486, 490 (9th Cir.1987); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2444 (2d ed. 1994). But the only method by which the plaintiffs tried to bring to the district court's (or our) attention the German law on the enforcement of forum selection clauses was by submitting to the district court an affidavit of German law *after* that court had dismissed the suit, when the plaintiffs moved for reconsideration. The judge was not obliged to consider this belatedly submitted affidavit. *Wilson v. Wilson,* 46 F.3d 660, 667 (7th Cir.1995); *Green v. Whiteco Industries, Inc.,* 17 F.3d 199, 201 n. 4 (7th Cir.1994). Nor are we. It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless. Also waived because not made until the motion for reconsideration is the argument that the plaintiffs have a claim against Refco that does not involve the promoters and trustees at all and is therefore entirely outside the orbit of the forum selection clause.

■ The plaintiffs' next argument is that the reference in the prospectuses to "the most respected brokerage firms" and to U.S. regulation of the commodities and securities markets should be treated as Refco's consent to being sued in the United States under U.S. securities laws. This is an implausible interpretation of the reference, which taken in its natural sense is to administrative regulation, not to private damages suits and certainly not to the forum in which to bring such suits. It would be a little odd to try to reassure German investors in German commodity pools by telling them that if you fleece them they can bring a class action suit in Chicago against an American broker. Not completely odd, because America is well known to be heaven for plaintiffs. But sufficiently odd to defeat an inference not otherwise supported that the reference in the prospectuses to U.S. regulation encompasses private suits for damages.

■ The plaintiffs argue that the forum selection clause in the investment contracts is permissive rather than mandatory: it allows either party to sue in Germany; it does not require suit there. This too is implausible. The absence of the indefinite article (the clause says "place of jurisdiction" is Germany, not "a place of jurisdiction" is Germany) implies that there is only one place of jurisdiction. One hesitates to put much weight on semantic niceties when dealing with a translation; the contracts between the pools and the investors, in which this forum selection clause is found, are entirely in German. The translation, however, is the plaintiffs'.

We are given greater pause by the Eleventh Circuit's decision in *Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231 (11th Cir. 1985) (per curiam), finding an identical formula ("place of jurisdiction is") ambiguous as to whether it was mandatory or permissive. But there is more here. The phrase "to the extent permissible" would have no function if the clause were not mandatory—if, in other words, a party could sue anywhere he wanted. And the *natural* forum for a suit between Germans over contracts formed in Germany would be—Germany. You would not need a clause to *permit* suit in the very place to which no one could object as the site of the suit. But you would need the clause to *require* suit there if there were alternative possible sites. The obvious function of the clause is to rule out those alternative sites and require that suit be brought in Germany, provided there is no legal obstacle to suing there.

The qualification "to the extent permissible" has additional significance in this case. If Refco was and is not suable in Germany at all, then the effect of the qualification is to allow the plaintiffs to sue Refco anywhere, even if the forum selection clause is entirely applicable and enforceable. But the plaintiffs, while arguing belatedly that a German court would not have required Refco to litigate in Germany by virtue of the forum selection clause, have not argued that they could not and cannot sue Refco in Germany, wholly without regard to the forum selection clause, because a German court could not obtain jurisdiction over Refco, or for some other reason. Either the plaintiffs missed the point, or they can sue Refco in Germany, all right, though (for reasons to be noted) with less prospect for a large success.

■ The plaintiffs' next argument is that mutuality is destroyed by the other forum selection clause, the one in the brokerage contracts, the one that allows Refco to select Chicago as the venue for a suit arising out of those contracts. The argument runs that if the plaintiffs had wanted to sue in Germany, Refco could have invoked that clause to shift the litigation to Chicago. We do not think this is correct, even if—an issue of German law on which the briefs cast no light—contracts with the pools are deemed to be contracts with the investors in the pools, that is, with the members of the unincorporated associations, or even if, alternatively, the investors are deemed "closely related" to the pools. The clause, though broadly worded, envisages suits that arise out of disputes between Refco on the one hand and the promoters or trustees on the other. That is not the character of the suit between the investors and Refco. Refco has no quarrel with the promoters or trustees, hence no dispute arising out of the brokerage contracts with them. So it could not have invoked the clause (thus destroying the mutu-

ality of the forum selection clause in the investment contracts) had it wanted to litigate with the plaintiffs in Chicago rather than in Germany.

The plaintiffs are very concerned about what they contend are the inadequacies of German securities law from a plaintiff's perspective. If the inadequacies went so far as to bar the plaintiffs from suing Refco in Germany altogether, then the forum selection clause in the investment contracts would by its own terms entitle them to sue elsewhere. But they do not argue this. And once the reference in the prospectuses to American regulation of the commodity markets is understood to be a reference to direct regulation rather than to private suits, we can hardly be confident that these plaintiffs, who are German nationals, thought that by investing in commodity pools promoted and managed by other Germans they were acquiring a right, should the pools collapse, to sue an American firm in America under American law—in the face of a forum selection clause that not only makes Germany the venue for any suit but further provides that the contract is subject to German law. In so observing we do not mean to imply that the contract, or the dispute arising out of it, is *really* governed by German law. That will be for a German court to decide should the plaintiffs refile their suit in Germany. For all we know, Germany is as hospitable to choice of law clauses in contracts as American courts have become. *In re Stoecker*, 5 F.3d 1022, 1028 (7th Cir.1993); *Bonny v. Society of Lloyd's*, 3 F.3d 156 (7th Cir.1993); *Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763 (D.C.Cir.1992). But whether it is or not has no relevance to our decision.

■ The plaintiffs have an argument of a different sort—that even if the forum selection clause in the investment contracts would bar this suit if properly invoked, Refco waited too long to invoke it. An objection to venue must be made at the earliest possible opportunity. Fed.R.Civ.P. 12(h)(1); *Snyder v. Smith*, 736 F.2d 409, 419 (7th Cir.1984); *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909–10 (5th Cir.1993); *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Industries*

*Fund*, 967 F.2d 688, 691–92 (1st Cir.1992). It was not made here until a year and a half after the suit had been filed and after Refco had filed two motions to dismiss without mentioning the forum selection clause in either one.

■ Refco argues with some basis in case law (though it is the minority view) that a motion to dismiss on the basis of a forum selection clause should be deemed to be brought under Fed.R.Civ.P. 12(b)(6) (failure to state a claim) rather than 12(b)(3) (improper venue). *Lambert v. Kysar*, 983 F.2d 1110, 1112 n. 1 (1st Cir.1993); *LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.*, 739 F.2d 4, 7 (1st Cir.1984); *Instrumentation Associates, Inc. v. Madsen Electronics (Canada) Ltd.*, 859 F.2d 4, 6 n. 4 (3d Cir.1988); *Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341 (3d Cir.1966), but see, e.g., *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 754 (7th Cir. 1992); *Hugel v. Corporation of Lloyd's, supra*, 999 F.2d at 207; *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir.1992). If so, Refco would escape the clutches of Rule 12(h)(1). But the argument is not persuasive. As we noted recently in a related context, that of prompt invocation of an arbitration clause, judicial economy requires selection of the proper forum at the earliest possible opportunity. *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir.1995). This precept is as applicable when the forum is challenged on the basis of a forum selection clause as it is when it is challenged on the basis of an arbitration clause, or as when there is a statutory as distinct from a contractual basis for thinking the suit belongs elsewhere. But waiver is itself waivable, *Fagan v. Washington*, 942 F.2d 1155, 1157 (7th Cir.1991); *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 663–64 (7th Cir.1986); *Lektro–Vend Corp. v. Vendo Co.*, 545 F.2d 1050, 1059 (7th Cir.1976), rev'd on other grounds, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977); *Conway v. Village of Mount Kisco*, 758 F.2d 46, 48 (2d Cir.1985), and once again the plaintiffs waived an argument (here it is the argument that Refco waived the forum selection clause) by not

making it until after the district court had dismissed the suit.

AFFIRMED.

SHABAZ, District Judge, dissenting.

The undersigned joins the majority except for a substantive concern pursued by appellants which has not been considered by either the District or this Appellate Court.

Plaintiffs' belatedly presented an affidavit on German law as a basis for their motion to reconsider the District Court's order of dismissal. In citing German Code of Civil Procedure § 38 appellants continue to argue that if the German forum selection clauses are enforced as ruled by the District Judge, plaintiffs will be deprived of their day in court. They contend that Refco will be unreachable by these plaintiffs because German law prohibits a non-party to a contract containing a forum selection clause from being bound by that clause and Refco will simply assert the Chicago forum selection clause when sued in Germany rendering it immune from suit by plaintiffs in all jurisdictions. In response Refco says in effect we don't know and we don't care—too late. Footnote 15 of Appellees brief states: Because the affidavit was submitted belatedly, the Court cannot know whether a counter-affidavit would have demonstrated conclusively that plaintiffs' affidavit was incorrect in its description of German law. Counsel's comments were no more helpful at oral argument.

The majority recognizes the importance of plaintiffs' argument and agrees that unless the forum selection clause is enforceable against Refco, Refco might not be suable in Germany at all, in which event the clause by its own terms would authorize the plaintiffs to sue Refco elsewhere.

Having said all this let it be understood that the undersigned is in agreement with the majority that the district judge was not obliged to consider this belatedly considered affidavit and if "such a procedure were countenanced, some law suits really might never end, rather than just seeming endless."

Nevertheless, an exception should be made where plaintiffs may be deprived of their access to court altogether, or are sent to Germany and return for that eventual relief to which they may be entitled. This could be avoided where the single, significant issue could be resolved at this time by either sending it a few floors down for limited remand with directions or providing a supplemental briefing schedule for consideration by this Court.

It is fundamental that on appeal to this court a litigant is restricted to those arguments which already have been raised at the district court level. There are narrow exceptions to this rule, "where jurisdictional questions are presented or where, in exceptional cases, justice demands more flexibility." *International Travelers Cheque Co. v. BankAmerica Corp.,* 660 F.2d 215, 225 (7th Cir.1981).

*Old Republic Ins. Co. v. Federal Crop Ins. Corp.,* 947 F.2d 269, 276 (7th Cir.1991).

Although the argument pursued by plaintiffs may not be jurisdictional, nonetheless, the circumstances of this appeal appear to be exceptional.

The general rule is that an appellate court will not consider an issue not raised in the trial court except where the obvious result would be a miscarriage of justice or where failure to consider the issue would be inconsistent with substantial justice. *See Gregory ex rel. Gregory v. Honeywell, Inc.,* 835 F.2d 181, 184 (8th Cir.1987).

*Estate of Vak v. C.I.R.,* 973 F.2d 1409, 1412 (8th Cir.1992).

Believing this to be an exceptional case and that failure to consider the issue of German law would be inconsistent with substantial justice where that determination could be readily resolved by either this or the District Court, I dissent.