F I L E D
United States Court of Appeals
Tenth Circuit

DEC 23 2002

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

K & V SCIENTIFIC CO., INC., a New
Mexico corporation,

     Plaintiff-Appellant,

v.

BAYERISCHE MOTOREN WERKE
AKTIENGESELLSCHAFT ("BMW"), a
corporation organized and existing under
the laws of Germany,

     Defendant-Appellee.

No. 02-2020

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-00-1615 BB/DJS)

---

John W. Boyd (David A. Freedman with him on the brief), Freedman Boyd Daniels
Hollander Goldberg & Cline P.A., Albuquerque, New Mexico, for the appellant.

Edward Ricco (Travis R. Collier and James P. Bieg with him on the brief), Rodey,
Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for the appellee.

---

Before **HENRY**, **PORFILIO**, and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

Plaintiff K & V Scientific Co., Inc., appeals the district court's grant of defendant Bayerische Motoren Werke Aktiengesellschaft's motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and reverse and remand for further proceedings.

I.

Plaintiff is a New Mexico corporation with its principal place of business in Los Alamos, New Mexico. Plaintiff is "engaged in development and commercialization of advanced technology products and processes," including "automotive safety product engineering." App. at 8. Alan Kammerman, who along with his wife Rosalie owns plaintiff, "is an engineer and scientist" who specializes "in marrying sophisticated technologies for new applications." Id.

In 1995, plaintiff began "developing concepts for advanced automotive safety systems, including . . . the use of semiconductor bridge technology as the foundation for 'smart' systems for triggering air bags."[1] Id. at 11. The semiconductor bridge technology was first developed by Sandia Laboratories for use in certain defense programs, and was subsequently transferred to SCB Technologies, Inc. (SCBT), a corporation formed for the purpose of commercializing the technology. In early 1996, SCBT, its sister company The

_____

[1] According to plaintiff's complaint, a "semiconductor bridge is a heavily doped, micron-sized polysilicon bridge that bursts into a plasma discharge when a low energy firing pulse is applied," and "[a] semiconductor bridge igniter utilizes a semiconductor bridge as the ignition element to ignite a pyrotechnic material for inflating air bags." App. at 10.

2

Ensign-Bickford Company, and its parent corporation Ensign-Bickford Industries, Inc., entered into agreements with plaintiff, pursuant to which the three companies "encouraged [plaintiff] to pursue relationships with the auto industry and agreed . . . to protect [plaintiff's] work-product."[2] Id. at 11-12.

In 1996, plaintiff contacted defendant, a German corporation based in Munich and engaged in the design and manufacture of automobiles. Defendant expressed interest in the igniter technology. On July 8, 1996, plaintiff and defendant signed a confidential disclosure agreement to allow them to "evaluat[e] the . . . technology for potential implementation in vehicles manufactured by [defendant]." Id. at 30. After entering into the agreement, the parties began disclosing confidential information to each other so they could explore the possibility of using the igniter technology in defendant's air bag systems. Further, in November 1996, the parties met in Munich and agreed that plaintiff would "design for [defendant's] 'next generation' air bag system[s]." Id. at 13. At the same time, plaintiff and defendant "agreed on a schedule for development and manufacture extending into the year 2005." Id.

On January 27, 1997, without any prior discussion or solicitation, defendant mailed plaintiff a new confidentiality agreement signed by an authorized representative of defendant. The stated purpose of the new agreement was to allow the parties "to

---

[2] It is unclear from the record precisely how plaintiff first learned of the technology, or how it began adapting the technology prior to entering into agreements with the three companies.

exchange confidential information" regarding a "Squib for Airbag," and to "avoid any misuse of such information." Id. at 33. Unlike the July 1996 agreement, the new agreement contained a jurisdictional and choice of law provision which stated: "Jurisdiction for all and any disputes arising out of or in connection with this agreement is Munich. All and any disputes arising out of or in connection with this agreement are subject to the laws of the Federal Republic of Germany." Id. at 34. Plaintiff signed the agreement on February 4, 1997.

After the new agreement was signed, defendant allegedly requested that plaintiff proceed with the igniter design and allegedly reassured plaintiff that, assuming defendant used the technology for its air bag system, the parties would then work out the financial details of their relationship. Plaintiff continued its development work and ultimately provided defendant "with a series of sophisticated designs for interfacing a semiconductor bridge igniter with [defendant's] air bag systems needs." Id. at 14.

Further communication between plaintiff and defendant followed, including another meeting in Munich. Plaintiff alleges that following that meeting, defendant asked plaintiff to "make an offer for development and production of a new air bag igniter." Id. at 15. In response, plaintiff "expressed a willingness either to appropriately license the necessary technology from SCBT, or to become partners with SCBT and The Ensign-Bickford Company and its parent corporation, in pursuing the BMW opportunity." Id. Ensign-Bickford, however, "insisted that [plaintiff] not submit any pricing proposal to

4

[defendant] that Ensign-Bickford had not approved." Id.

Although plaintiff alleges it made a number of proposals to Ensign-Bickford in 1997, no agreement was reached. In September 1997, defendant contacted plaintiff "and finally informed [plaintiff] that [defendant] did not intend to pursue any business activities with [plaintiff]." Id. at 19. Plaintiff alleges that defendant, Ensign-Bickford and SCBT then proceeded to engage "in the development and manufacture of the 'next-generation' air bag igniter system that [plaintiff] designed and promoted."[3] Id. at 20. To date, plaintiff has received no compensation from defendant for its development work.

Plaintiff filed suit against defendant in New Mexico state court, asserting claims for (1) breach of the July 8, 1996, confidential disclosure agreement, (2) breach of the February 4, 1997, confidentiality agreement, (3) breach of the duty of good faith and fair dealing, (4) unjust enrichment/quantum meruit, (5) violation of New Mexico's Trade Secrets Act, (6) violation of New Mexico's Unfair Trade Practices Act, (7) estoppel to deny partnership and breach of partnership agreement, (8) fraud, and (9) breach of fiduciary duty. Defendant removed the case to federal court and moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (3) for lack of personal jurisdiction and improper venue. The district court granted defendant's motion to dismiss for improper venue. In doing so, the district court concluded that the forum selection clause contained in the February 4, 1997, confidentiality agreement was "unambiguous and enforceable," and

_____

[3] Defendant denies that it has made commercial use of plaintiff's designs.

5

demonstrated "[t]he parties' intent to locate jurisdiction for this action solely in the courts of Munich." Id. at 392.

## II.

On appeal, plaintiff asserts the district court erred in dismissing its complaint for improper venue. In particular, plaintiff disputes the district court's conclusion that the forum selection clause contained in the February 4, 1997, confidentiality agreement mandates that any litigation between the parties be conducted exclusively in Munich, Germany. According to plaintiff, "[t]he language of the clause at issue . . . contains no reference to venue, contains no language designating the courts of Munich exclusive, and contains no language indicating that suit elsewhere is impermissible." Aplt. Br. at 16. Plaintiff further notes that defendant drafted the confidentiality agreement in general, and the forum selection clause in particular, and therefore the clause must be construed against defendant if it is deemed ambiguous.

"A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 956 (10th Cir. 1992). "The enforceability of [a] forum selection" clause is a "question[] of law which we review de novo."[4] Id.; see

_____

[4] The district court concluded that the interpretation of the forum selection clause at issue was a matter of federal common law. Because neither party has disputed this conclusion, we will treat the choice of law rules employed by the district court as the law of the case. See Coca-Cola Bottling Co of Ogden v. Coca-Cola Co., 4 F.3d 930, 933 n.3 (10th Cir. 1993).

6

also Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d 318, 320 (10th Cir. 1997) (noting that de novo review is appropriate because the issue turns on an analysis of the language of a contractual clause); SBKC Serv. Corp. v. 1111 Prospect Partners, L.P., 105 F.3d 578, 581 (10th Cir. 1997) (holding that "construing the clause is a matter of contract interpretation that we review de novo").

Plaintiff does not dispute the general validity of the forum selection clause contained in the parties' February 4, 1997, confidentiality agreement. See generally M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (holding that forum selection clauses contained in international arms-length contracts are considered to be prima facie valid); Riley, 969 F.2d at 957 ("When an agreement is truly international, as here, and reflects numerous contacts with the foreign forum, the Supreme Court has quite clearly held that the parties' choice of law and forum selection provisions will be given effect."). Instead, plaintiff contends that the forum selection clause at issue is permissive, rather than mandatory, and therefore does not require litigation in Munich. See Citro Florida, Inc. v. Citrovale, S.A., 760 F.2d 1231, 1232 (11th Cir. 1985) (noting that "[t]he Bremen court did not reach the distinctions between mere 'consent to jurisdiction' clauses and 'mandatory' clauses").

This court and others have "frequently classified" forum selection clauses "as either mandatory or permissive." Excell, 106 F.3d at 321. "Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the

7

designated forum." Id. (internal quotations omitted). "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." Id. (internal quotations omitted).

In addressing the mandatory/permissive issue, the district court concluded there was "a distinct lack of cohesion among" federal circuit decisions, which the district court attributed to "semantic hairsplitting." App. at 389 (internal quotations omitted). The district court therefore purported to rely exclusively on Tenth Circuit precedent in general, and our decision in Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342 (10th Cir. 1992), in particular. In Milk 'N' More, we concluded that a forum selection clause stating "venue shall be proper under this agreement in Johnson County, Kansas" was mandatory. 963 F.2d at 1346. Based upon our holding in Milk 'N' More, the district court concluded that the relevant language of the forum selection clause at issue here, i.e., "jurisdiction . . . is Munich," was unambiguous and mandatory. App. at 390. The district court also concluded that the choice of law provision contained in the parties' confidentiality agreement "support[ed] the interpretation that jurisdiction is to be located exclusively in a court best suited to interpret and apply German law, e.g., Munich." Id. at 391. Finally, in a footnote, the district court noted that defendant was a "sophisticated global company with ample legal resources to devote to its international contracts," and "would be well-advised to study American jurisprudence and draft forum selection clauses including specific 'exclusivity' language, so as to leave no doubt regarding the

8

clauses' enforceability." Id. In that same footnote, the district court cited a federal district court opinion involving a forum selection clause drafted by defendant that stated "the exclusive jurisdiction for disputes concerning . . . this agreement is . . . Germany." Id. (citing Caribe BMW, Inc. v. BMW, 821 F. Supp. 802, 818-19 (D. P.R. 1993)).

We reject the district court's analysis for several reasons. First, virtually all of the Tenth Circuit cases dealing with forum selection clauses are distinguishable from the instant case. In other words, no Tenth Circuit case to date has dealt with a forum selection clause similar to the one at issue. Thus, contrary to the conclusion reached by the district court, Tenth Circuit precedent in general, and the Milk 'N' More decision in particular, are of little assistance in resolving the current dispute.

Second, contrary to the conclusion reached by the district court, case law from other circuits involving forum selection clauses similar to the one at issue here is surprisingly uniform. Generally speaking, the circuits that have addressed the issue are in agreement that

> where venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive.

Paper Express, Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 757 (7th Cir. 1992); see John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. & Distrib. Inc., 22 F.3d 51, 52 (2d Cir. 1994) (same); Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir.

9

1989) (same); Citro Florida, 760 F.2d at 1232 (concluding that language of forum selection clause discussing jurisdiction in nonexclusive language reasonably could be construed as permissive); Keaty v. Freeport Indonesia, Inc., 503 F.2d 955, 957 (5th Cir. 1974) (same). Applying this rule, these circuits (and the district courts within them) have held the following forum selection clause language to be permissive:

> * "Any dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts." John Boutari, 22 F.3d at 52.
>
> * "The laws and courts of Zurich are applicable." Caldas & Sons, Inc. v. Willingham, 17 F.3d 123, 127 (5th Cir. 1994).
>
> * "The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract." Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 76 (9th Cir. 1987).
>
> * "Place of jurisdiction is Sao Paulo/Brazil." Citro Florida, 760 F.2d at 1231 (concluding phrase was ambiguous and, when construed against drafter, was permissive).
>
> * "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York." Keaty, 503 F.2d at 956 (concluding phrase was ambiguous and, when construed against drafter, was permissive).
>
> * "This agreement shall be governed by and construed in accordance with the laws of the Federal Republic of Germany. * * * Place of jurisdiction shall be Dresden." Hull 753 Corp. v. Elbe Flugzeugwerke GmbH, 58 F. Supp. 2d 925, 926 (N.D. Ill. 1999).

Applying the same rule, these courts have held the following clauses to be mandatory:

> * "[P]lace of jurisdiction . . . is the registered office of the trustee [in Germany], to the extent permissible under the law." Frietsch v. Refco, Inc.,

10

56 F.3d 825, 827 (7th Cir. 1995); see id. at 829 (concluding that the phrase "to the extent permissible under the law" "would have no function if the [forum selection] clause were not mandatory–if, in other words, a party could sue anywhere he wanted").[5]

* "In all disputes arising out of the contractual relationship, the action shall be filed in the court which has jurisdiction for the principal place of business of the supplier . . . .  The supplier also has the right to commence an action against the purchaser at the purchaser's principal place of business."  Paper Express, 972 F.2d at 755; id. at 756 (concluding the last sentence "would be appropriate and meaningful only if the clause were in fact mandatory").

* "Licensee hereby agrees and consents to the jurisdiction of the courts of the State of Virginia.  Venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia."  Docksider, 875 F.2d at 763.

The only circuit that has adopted an arguably different rule is the Sixth Circuit.  In General Electric Co. v. G. Siempelkamp GmbH & Co., 29 F.3d 1095 (6th Cir. 1994), a case cited by defendant in its appellate brief, the court was asked to interpret a forum selection clause that read as follows:

Place of jurisdiction for all disputes arising in connection with the contract shall be at the principal place of business of the supplier. This shall also apply for claims in summary procedures on bills of exchange, promissory notes or cheques. The supplier is also entitled to file a suit at the principal place of business of the purchaser.

Id. at 1097.  In construing the clause, the Sixth Circuit cited only the Bremen decision,

[5] Although defendant suggests that Frietsch supports its position, defendant is off-base.  The Seventh Circuit adopted the analytical framework outlined above in Paper Express, 972 F.2d at 757, a case that predates Frietsch.  In addition, the language of the forum selection clause at issue in Frietsch is distinguishable from the language of the forum selection clause at issue here.

11

which did not involve a mandatory/permissive dispute, and concluded that, "[b]ecause the clause states that 'all' disputes 'shall' be at [defendant's] principal place of business, it selects German court jurisdiction exclusively and is mandatory." Id. at 1099. Although this brief explanation would provide support for defendant's position if viewed in isolation, it must be emphasized that the forum selection clause at issue in General Electric contains additional language that, under the analytical framework outlined above, leads to the conclusion that it is mandatory. In particular, the last sentence of the clause, which affords the supplier with the right "to file a suit at the principal place of business of the purchaser," lends support to the conclusion that the first sentence of the clause, placing jurisdiction for "all" disputes at the principal place of business of the supplier, was intended to confer exclusive jurisdiction. In other words, the clause, read as a whole, appears to require any disputes filed by the purchaser to be resolved exclusively at the principal place of business of the supplier.

Applying the majority rule, which we believe is sound, to the facts before us, we have little trouble concluding that the forum selection clause at issue is permissive. In particular, the clause refers only to jurisdiction, and does so in non-exclusive terms (e.g., there is no use of the terms "exclusive," "sole," or "only"). Cf. Caribe BMW, 821 F. Supp. at 818-19 (finding forum selection clause stating "the exclusive jurisdiction for disputes . . . is . . . Germany" to be mandatory). Even if the clause were deemed to be ambiguous (i.e., capable of being construed as either permissive or mandatory), the rule in

12

this circuit and others is that the clause must be construed against the drafter, in this case defendant. See Milk 'N' More, 963 F.2d at 1346 (holding "if there is any ambiguity in the clause [the court] should construe it against the drafter"). Accordingly, the clause would be deemed permissive. See Caldas & Sons, 17 F.3d at 127 (construing ambiguous forum selection clause against drafter as permissive); Citro Florida, 760 F.2d at 1232 (construing ambiguous forum selection clause against drafter "as a non-exclusive consent to jurisdiction"); Keaty, 503 F.2d at 957 (same).

Third, we find little support in Tenth Circuit case law, or in case law from other circuits, for the district court's decision to infer from the parties' choice of law provision that the forum selection clause is mandatory. Although the district court obviously was correct in noting that German courts are better prepared to apply German law than American courts, the parties' choice of law provision (even assuming that it is binding and controls all of plaintiff's claims) appears to carry little, if any, weight in determining whether the parties' forum selection clause was intended as mandatory or permissive.

Finally, the Caribe BMW decision, cited by the district court in a footnote, clearly demonstrates that defendant knows how to draft mandatory forum selection clauses, and thus supports our conclusion that the clause at issue is permissive. See 821 F. Supp. at 818-19 (finding forum selection clause stating "the exclusive jurisdiction for disputes . . . is . . . Germany" to be mandatory).

We REVERSE the judgment of the district court and REMAND for further proceedings.