IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30922

Summary Calendar

_____

LIONEL WAYNE MAGEE,

Plaintiff-Appellant,

versus

UNITED STATES POSTAL
SERVICE and MARVIN RUNYON,
Postmaster General,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(94-CV-1412)

_____

February 15, 1996

Before HIGGINBOTHAM, DUHE', and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Lionel Wayne Magee appeals from the entry of summary judgment
in favor of the United States Postal Service and Marvin Runyon,
Postmaster General of the U.S.  We have jurisdiction, 28 U.S.C.
§ 1291, and we affirm.

I.

Magee, a former employee of the Postal Service, sued the
Postal Service and the Postmaster General, alleging violations of

_____

[*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

the Rehabilitation Act, 29 U.S.C. § 791 et seq., and the Privacy Act, 5 U.S.C. § 552a.

Magee began working for the Postal Service in June 1983 as a Mailhandler. In 1992, Larry Fortsun, Magee's supervisor, referred Magee to the Postal Service's Employee Assistance Program due to concerns about his mental fitness for duty. Dr. J. Roderick Hundley, Magee's own psychiatrist, diagnosed Magee as suffering from Post Traumatic Stress Disorder, and Magee relayed this information to his supervisors.

Michael Smith, the Postmaster of Monroe, learned of the problems Magee had been having with work and his co-workers. In June, 1993, Smith requested that Magee undergo a fitness for duty examination. Dr. Rahn Sherman, a board-certified psychiatrist, performed the examination and concluded that Magee was not fit for duty due to his mental condition. Magee's own psychiatrist, Dr. Hundley, concurred with the conclusions in Dr. Sherman's report.

Based on this report, Smith decided to place Magee on off-duty status in July 1993. Magee sought Smith's assistance in applying for disability retirement based on his condition. After six months, Smith requested a second fitness for duty examination. Dr. Anthony Young, a clinical psychologist, performed the exam in June 1994 and concluded that Magee could not work in "any kind of stressful setting, whether that be from the work demands or the interpersonal or social demands of the setting at the present time."

After reviewing available positions, Smith concluded that Magee's condition rendered him unfit to work as a Mailhandler and that he could not be reasonably accommodated in the Monroe post office. Smith removed Magee from his position on July 5, 1994, and Donald Vercher, Smith's superior, advised Magee of his termination on August 8, 1994.

Alleging discrimination based on disability, Magee appealed his removal to the Merit Systems Protection Board. The Board affirmed the decision to remove Magee but concluded that the Postal Service had not given Magee a proper appeal when it placed him on off-duty status in 1993. The Postal Service awarded Magee backpay for that period. Magee did not appeal the Board's decision.

Magee filed this suit in August 1994. By an amended complaint, Magee alleged violations of the Rehabilitation Act and the Privacy Act. This district court granted summary judgment for the defendants on all claims. Magee now appeals.

## II.

To prevail under the Rehabilitation Act, Magee must prove that 1) he was an individual with a disability, 2) he was otherwise qualified, 3) he worked for the United States Postal Service, and 4) he was adversely treated solely because of his disability. 29 U.S.C. § 794(a); Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir. 1993). A qualified individual is, inter alia, one "who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others." 29 C.F.R.

§ 1613.702(f). The district court held that Magee failed to produce proof that he was capable of performing the essential functions of the job, either with or without reasonable accommodations.

Magee does not contest the district court's conclusion that the essential functions of a Mailhandler include the ability to work closely with others while processing mail. Rather, Magee challenges the district court's conclusion that he could not perform those functions, arguing that deposition testimony of two of Magee's supervisors, when viewed in the light most favorable to Magee, support an inference that Magee was capable of performing his job.

The district court considered and rejected this argument. Every doctor to examine Magee, including Magee's own psychiatrist, concluded that he was unable to work in the stressful environment of the Monroe post office. In light of this uncontradicted medical evidence, strained inferences drawn from the deposition testimony of Magee's supervisors do not raise a triable issue of fact. See Chiari v. City of League City, 920 F.2d 311, 317 (5th Cir. 1991) (affirming summary judgment in light of uncontradicted medical testimony).

Magee next contends that, regardless of his condition in July 1994, he was capable of performing his job in June 1993. Moreover, he contends that, even if he was not so capable, there is no evidence of the unavailability of a reasonable accommodation in June 1993. The first claims falls prey to the uncontradicted

4

medical opinions of two doctors that Magee was unable to perform his job at that time.

The second claim falls prey to the fact that neither doctor recommended any changes in Magee's work duties that would have rendered him able to perform his job. Nor did Magee request any accommodation from the Postal Service. To the contrary, Magee sought Postmaster Smith's help in completing documentation for disability retirement after he was notified of his off-duty status. Magee cannot now complain that the Postal Service failed to consider reasonable accommodations when he did not even request such accommodation.

Finally, Magee claims that the district court erred by not considering Magee's alternative claim of disparate treatment under the Rehabilitation Act. The amended complaint did not clearly allege a claim for disparate treatment. Even so, Magee did not press this claim either in his motion for summary judgment or in his opposition to the Postal Service's motion for summary judgment. In short, Magee abandoned this claim, if it was ever asserted at all. His belated attempt to resurrect it in his motion for reconsideration of the district court's grant of summary judgment is too little, too late. See Frietsch v. Refco, Inc., 56 F.3d 825, 828 (7th Cir. 1995).

### III.

Magee's Privacy Act claims fare no better. Magee alleges that Postal Service officials violated his privacy rights through various actions. Those actions include: 1) Smith's obtaining

5

Magee's medical records from Magee's private physician; 2) releasing those records to Dr. Tony Young; 3) Vercher's receiving a copy of Dr. Sherman's medical report; 4) Smith's receiving a copy of Dr. Sherman's medical report; and, 5) Smith's maintaining a secret file regarding Magee.  We address each in turn.

Magee argues that Smith obtained Magee's medical records from Dr. Hundley in violation of 39 C.F.R. § 266.4(a)(1)(ii), which provides that postal official will "collect information, to the greatest extent practicable, directly from the subject individual." The district court rejected Magee's claim, holding that Smith had satisfied the regulation by asking for these records after Magee informed him of their existence and by seeking a subpoena for them only after Magee refused to turn the records over to the Postal Service.  Magee concedes that he refused to turn over his medical records to Smith when Smith asked for them.  There was no error.

Magee next argues that the release of Magee's medical records to Dr. Tony Young violated the Privacy Act.  The district court held that the Privacy Act permitted the release of records "to an expert, consultant, or other person who is under contract to the Postal Service to fulfill an agency function, but only to the extent necessary to fulfill that function."  54 Fed.Reg. 43652-01(2)(F).  Magee's response that the release does not qualify under this exception because Dr. Young was not a contract physician and because he was retained to perform a one-time examination of Magee is unavailing.

Magee's third and fourth claims center upon the partial release of Dr. Sherman's medical report to Smith and Vercher. The district court rejected Magee's claims, concluding that 5 U.S.C. § 552a(b)(1) allows disclosure "to those officers and employees of the agency . . . who have a need for the record in the performance of their duties." Magee does not contest that Smith and Vercher have a need for the record as part of their duty to manage Postal Service employees under their supervision, nor does Magee address the controlling effect of the statute's own language. Rather, he alleges that Smith and Vercher violated the Privacy Act because they did not follow the procedure for requesting medical records as provided by internal Postal Service rules not published in the Code of Federal Regulations. We doubt that the violation of these internal rules states a claim under the Privacy Act. Even so, we cannot ignore the clear mandate of the Privacy Act itself.

Finally, Magee claims that Smith maintained a secret file in his desk drawer regarding Magee in violation of 39 C.F.R. § 268.1(b), which provides that "[n]o employee will maintain a secret system of records about individuals." The record, viewed in the light most favorable to Magee, only shows that Smith retained copies of relevant documents regarding Magee during the pending review of Magee's employment status. Moreover, Magee knew of the file's existence and had discussed the file's security with Smith. In short, Smith's limited file-keeping was not a "secret system of records about individuals."

AFFIRMED.