NANCY D. FREUDENTHAL, UNITED STATES DISTRICT JUDGE
This matter is before the Court on several motions made by the parties, including Plaintiff's Motion to Remand and Defendants' Motions to Dismiss. The Court has considered the evidence, motions, responses, and replies, and is fully informed in the premises. For the following reasons, the Court finds and Orders Plaintiff's Motion for Remand (Doc. 20) is DENIED; John Dugald Mactaggart's Motion to Dismiss First Amended Complaint (Doc. 11) is GRANTED; Defendants Quentin Morgan and Ewan Meldrum's Motion to Dismiss (Doc. 35) is GRANTED as to Defendant Meldrum on personal jurisdiction and for Defendant Morgan on issue preclusion; Defendant Brisbane Angels Group, Ltd's Motion to Dismiss (Doc. 13) is GRANTED; Defendants Jontra Holding Pty and Associated Construction Equipment Pty. Ltd's Motion to Quash Service (Doc. 16) is GRANTED; Defendants Simon Ashton, Kinabalu Australia Pty. Ltd., Kinabalu Australia Trust, and ProX Pty. Ltd.'s Motion to Dismiss (Docs. 18) is GRANTED; Plaintiff's Motion to Defer Briefing on Motion for Sanctions (Doc. 30) is GRANTED, and Plaintiff's Motion to File Surreply (Doc. 63) is GRANTED. The Court finds that all claims in this case are DISMISSED based on issue preclusion.
BACKGROUND
Plaintiff Gas Sensing Technology Corp. ("GSTC") brought this action against Defendants for engaging in activities to improperly take over ownership and control of GSTC's subsidiary WellDog Pty. Ltd. ("WellDog")[1] and misappropriating GSTC's intellectual property and trade secrets. (Doc. 8 [Amended Compl.] ). The takeover is referred to as the "Take Over Action" or "Take Over Activities" and those engaged in the Take Over Action are referred to as the "Take Over Group." (Id. at ¶ 30).
This action is the second time Plaintiff has asserted these claims before this Court. See Gas Sensing Tech. Corp. v. Ashton et al. , 16-cv-272-F ("Ashton I "). In that action the Court found that several defendants were not subject to personal jurisdiction in Wyoming, that the claims against other defendants were more properly heard in Australia, rather than this district, and that some claims failed to state a claim because GSTC relied on group pleading, making it impossible to determine the specific allegations against each defendant. Approximately a year after the Court dismissed that lawsuit without prejudice, GSTC refiled its Complaint in this case in state court. Defendants then *1198 removed this case to federal court. An Amended Complaint and a flurry of motions followed.
GSTC "is an energy-focused technical services company that has developed its own patented reservoir Raman chemical sensing systems to provide commercial reservoir analysis services for coal, gas, alternative and conventional resources ...." (Doc. 8 [Amended Compl.] at 8, ¶ 99). On December 3, 2010, GSTC formed WellDog in Australia as its wholly owned subsidiary with the intent to expand its energy services throughout Australia. (Id. ¶ 103). GSTC then sought private venture equity and debt from experts in the energy industry. (Id. ¶ 107). On June 1, 2011, the Ashton Controlled Entity Kinabalu invested private venture equity in GSTC by purchasing shares of stock. (Id. ¶ 112). Between 2011 and 2014, the Ashton Controlled ProX provided approximately $4,000,000.00 in total venture debt. (Id. ¶ 120). In addition, the Linklater and Brisbane Angels also provided private venture equity and debt to GSTC. (Id. ¶¶ 125, 128).
At the request of Ashton, Defendant Quentin Morgan ("Morgan") was hired in 2011 as GSTC's Chief Technology Officer. (Id. ¶ 131). GSTC claims Morgan became Ashton's agent and used his position to assist the Take Over, violating his duty of loyalty. (Id. ¶¶ 135, 136). Defendant Graeme Michael Linklater ("Linklater"), was WellDog's Chief Financial Officer ("CFO") until April 2016. GSTC claims "Defendant Linklater used confidential financial and company information acquired while employed by WD Pty and an officer of GSTC to direct and assist the Take Over Group in its Take Over Activities." (Id. ¶141).
In December of 2012, an international oil and gas exploration and production company approached GSTC about developing a new technology for shale gas exploration. (Id. ¶ 147). To help finance the research and development, "the international exploration and production company's technology venture capital subsidiary named Shell Technology Ventures ("INVESTOR") invested capital in GSTC in exchange for private venture equity with the expectation for further investment upon a successful beta trial of the technology." (Id. ¶ 148). In May of 2015, GSTC completed a successful beta trial. (Id. ¶ 149). According to GSTC, "[t]he capital expected to be raised by the second round of INVESTOR equity investment in GSTC would have paid all maturing venture debt owed to Ashton/Ashton Trust, Mactaggart/Jontra/ACE, Brisbane Angels and Linklater/Linklater Trust." (Id. ¶ 152). GSTC also claims that "[u]pon receipt of the INVESTOR's equity investment, GSTC would have been able to secure additional private equity and debt investment sufficient to pay in full the private venture debt provided by all Defendants and their respectively controlled entities." (Id. ¶ 153).
On November 19, 2014, Defendant Ashton signed the Director Agreement acknowledging his duties as a director of GSTC under Wyoming law. (Id. at 23, ¶ 155). On August 5, 2015, the GSTC Board of Directors adopted Resolution B to become part of the GSTC's By-Laws. (Id. ¶ 162). GSTC claims Ashton has repeatedly violated the Code of Conduct to benefit the Ashton/Ashton Trust to the detriment of GSTC and its shareholders. (Id. ¶ 165). GSTC claims that in August of 2015, Ashton began "attempting to sell Kinabalu's shares of GSTC to INVESTOR in competition with GSTC's efforts to secure additional private venture equity investments from INVESTOR." (Id. ¶ 166). On August 14, 2015, GSTC's Chair of the Board of Directors, Dr. John Michael Pope, sent an email to Ashton warning Ashton that if he continued to pursue a transaction with INVESTOR, it would be considered a violation of the Director *1199 Agreement and Code of Conduct. (Id. ¶ 168). Despite this email, Ashton
offered to sell and sold to INVESTOR below market value non-statutory shares acquired by his Ashton/Aston Trust through options or warrants ... for a price far in excess of the purchase price of the shares, but at [a] price well below the market price that INVESTOR would have paid GSTC for additional shares.
(Id. ¶ 170). Ashton notified GSTC's Board of Directors of his sale of Kinabalu shares to INVESTOR on November 13, 2015. (Id. ¶ 173). GSTC alleges Ashton "wrongfully converted for his sole benefit, GSTC's business opportunities and deprived GSTC of the business opportunities to sell its shares that would have benefited all shareholders pro rata." (Id. ¶ 175). Because Ashton converted the INVESTOR capital to his own use and thereby denied GSTC access to the capital, "Ashton prevented GSTC from having a means to extinguish the Ashton's alter ego ProX debt." (Id. ¶ 186).
GSTC also alleges that while Ashton served as the Wyoming Director for GSTC, he devised "a plan to unlawfully and inequitably divest GSTC of its WD Pty subsidiary and/or assets of WD Pty for their benefit." (Id. ¶ 194). GSTC claims this was the plan for the Take Over Action. Mactaggart, Jontra, ACE and Brisbane Angels aided the Take Over Group. (Id. ¶ 196). On August 17, 2015, Mactaggart and Linklater requested GSTC and WellDog to allow them to move their venture capital debt from an obligation to Welldog to GSTC. (Id. ¶ 197). This reorganization of capital left "ProX as the sole entity providing WD Pty venture capital debt." (Id. ¶ 198). During this time, Ashton also recruited Linklater and Chief Technology Officer Quentin Morgan to help implement the Take Over Action. (Id. ¶ 203).
GSTC alleges that part of the Take Over Action was to simultaneously foreclose on the Take Over Group's venture debt. (Id. ¶ 212). Thus, on September 1, 2016, ProX issued WellDog an initial notice of default based on the alleged failure to provide it with certain financial information for the months of June and July 2016.[2] (Id. ¶¶ 213-214). GSTC claims it cured the alleged default on September 9, 2016. (Id. ). Similarly, Mactaggart also issued a notice of default to GSTC.[3] (Id. ¶ 226). GSTC claims Mactaggart manufactured defaults were in violation of the debt instruments. (Id. ¶ 227).
GSTC claims that in the summer of 2016, the Take Over Group began exposing the Take Over Action. (Id. ¶ 267).
The plan for Simon Ashton through entities he controlled was to take over WD Pty. and for ACE, Jontra, and BA to take over GSTC was secretly articulated in an email from Defendant Ashton, dated September 21, 2016, to Defendant Meldrum, Defendant Morgan, and Defendant Linklater, with a fictitious proposed press release to be issued on October 1, 2016, suggesting that GSTC was surrendering its Australia WD Pty assets to ProX.
(Id. ). As a result of the Take Over Group's conduct, GSTC claims damages, including the inability to pay out certain debts owed by WD Pty and GSTC, operational constraints due to undercapitalization, the inability to raise additional capital, the inability to realize certain commercial and *1200 market opportunities, significantly weakening GSTC's financial condition, leaving them vulnerable to exploitation by Defendants. (Id. ¶¶ 274-280). GSTC's two lawsuits followed, along with a number of other actions in other courts.
DISCUSSION
Currently before the Court are GSTC's Motion to Remand (Doc. 20), Defendant Mactaggart's Motion to Dismiss and for Sanctions (Doc. 11), Defendant Brisbane Angels Group Ltd's Motion to Dismiss (Doc. 13), Motion to Dismiss or to Quash filed by Associated Construction Equipment Pty Ltd and Jontra Holdings Pty Ltd (Doc. 18), and Motion to Dismiss and Quash Service by Defendants Ewan Meldrum and Quentin Morgan (Doc. 35). The Court will first consider GSTC's Motion to Remand.
GSTC's Motion to Remand
GSTC filed its Motion to Remand asserting that the Finance Notes between Defendants Jontra, Associated Construction Equipment Pty Ltd, ("ACE") and Brisbane Angels Group Ltd ("BAG") and GSTC contained a forum selection clause waiving Defendants' right to removal. Alternatively, GSTC claims the Court should exercise its discretion and decline to exercise jurisdiction over this case that contains purely state law claims. Defendants oppose the motion asserting that the language in the Finance Notes does not prohibit waiver in this case and that abstention is inappropriate in this case.
Under 28 U.S.C. § 1441(a), a "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Thus, to remove a case from state court to federal court, federal question or diversity jurisdiction must exist. See id.
Under 28 U.S.C. § 1332,
district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between-
(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
28 U.S.C. § 1332(a) (emphasis added). However, because federal courts are courts of limited jurisdiction, "there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome." De La Rosa v. Reliable, Inc. , 113 F.Supp.3d 1135, 1155 (D.N.M. 2015).
Forum Selection Clause
In this case, GSTC claims the language in the Finance Notes between it and Jontra, ACE, and BAG contains a mandatory forum selection clause requiring suit in Albany County District Court. The specific language at issue in all the Finance Notes provides:
If there is a lawsuit, we agree to submit to the jurisdiction of the court of Albany County, the State of Wyoming, United States. This Finance Note [ ] shall be governed by and construed in accordance *1201 with the laws of the State of Wyoming except where preempted by or inconsistent with Federal law in which case Federal law will govern.
(Doc. 21-1 at 2, 5, 8, 11, and 14).
The issue is whether this language creates a mandatory forum selection clause. This is a question regarding the interpretation of the Financing Notes, which is governed by Wyoming law, unless preempted by or inconsistent with federal law.
The Wyoming Supreme Court has well settled rules of contract construction:
Our purpose in interpreting any contract is to ascertain the true intent of the parties. State v. Pennzoil Co. , 752 P.2d 975, 978 (Wyo.1988). If the language of a contract is plain and unequivocal, that language is controlling. Dewey v. Dewey , 2001 WY 107, ¶ 20, 33 P.3d 1143, 1148 (2001). The plain meaning of the contract is the meaning which the language would convey to reasonable persons at the time and place of its use. Dickson v. Thomas (In re Estate of Thomas) , 2009 WY 10, ¶ 7, 199 P.3d 1090, 1094 (2009).
Sutherland v. Meridian Granite Co. , 273 P.3d 1092, 1095 (Wyo. 2012). Additionally, the Tenth Circuit has explained the difference between "mandatory" and "permissive" forum selection clauses.
This court and others have "frequently classified" forum selection clauses "as either mandatory or permissive." Excell, Inc. v. Sterling Boiler & Mechanical, Inc. , 106 F.3d 318, 321 (10th Cir. 1997). "Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum." Id. (internal quotations omitted). "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." Id. (internal quotations omitted).
K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW") , 314 F.3d 494, 498 (10th Cir. 2002). Additionally, the Tenth Circuit has found that
where venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive.
Id. (citation omitted) (containing a list of both permissive and mandatory forum selection clauses).
The language at issue in the Finance Notes, is clearly permissive. The language provides that the parties "agree to submit to the jurisdiction of the court of Albany County, the State of Wyoming, United States." The Finance Notes only mention jurisdiction, there is no mention of venue and no limiting language indicating the intent to require litigation in the court of Albany County. Additionally, there is no other language in the Financing Note that would indicate the parties' intention to make the court of Albany County, Wyoming exclusive.
For these reasons, the Court finds the forum selection clause is not mandatory requiring remand to the state court.
Abstention Doctrine
GSTC alternatively claims the Court should remand under the Colorado River abstention doctrine. The Colorado River Abstention Doctrine allows a "federal court to dismiss or stay a federal action in deference to pending parallel state court proceedings, based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " Fox v. Maulding , 16 F.3d 1079, 1080 (10th Cir. 1994) (citations omitted).
*1202 The United States Supreme Court explained:
Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."
Colorado River Water Conservation Dist. v. United States , 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (citing County of Allegheny v. Frank Mashuda Co. , 360 U.S. 185, 188-189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959) ).
There are three general categories where abstention is appropriate. Specifically, "[a]bstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law"; "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; and "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings" (the Younger doctrine). Colorado River , 424 U.S. at 815-816, 96 S.Ct. 1236 (citations and internal quotation marks omitted).
GSTC claims that Jontra, ACE and BA filed a civil action against GSTC in state court seeking to collect on private venture capital debt originally provided to WellDog. GSTC filed affirmative defenses and counterclaims mirroring claims currently asserted in the Amended Complaint. Additionally, Defendant Linklater and Meldrum have filed a civil action in state court against GSTC seeking to foreclose on its private venture capital debt. GSTC claims that having the same Court address all these claims would promote judicial efficiency and prevent inconsistent results.
However, the State Court actions only involve five of the ten Defendants involved in this case. This case involves significantly more claims than the state court action. Also, this case involves several foreign defendants. Additionally, there are no difficult issues of state law involved.
The Court finds that remand is not appropriate based on either the forum selection clause or federal abstention. For all of these reasons, the Court finds GSTC's Motion to Remand (Doc. 20) is DENIED.
MOTIONS TO DISMISS
Having found that remand is not appropriate in this case, the Court will next consider the Defendants' Motions to Dismiss. It is well-settled that "a judge ruling on a defendant's motion to dismiss a complaint, 'must accept as true all factual allegations contained in the complaint.' " Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 572, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). The Court must also view the allegations in the light most favorable to the nonmoving party. See Sutton v. Utah State Sch. for Deaf & Blind , 173 F.3d 1226, 1236 (10th Cir. 1999).
As the Court previously noted, there are several pending motions to dismiss and motions to quash service. To address these motions in an organized manner, the Court will first consider motions related to personal jurisdiction and improper service, then the Court will consider the motions related to issue preclusion.
*1203 A. Defendants Jontra and ACE Motion to Dismiss for Lack of Service
Defendants Jontra and ACE seek dismissal because GSTC failed to properly serve them. GSTC attempted to serve Jontra and ACE by mailing copies of the summons and Complaint to Mactaggart's post office box in Australia. In response, GSTC acknowledges that service was completed through the post office. However, GSTC argues that Mactaggart was personally served the Complaint in his individual capacity. Additionally, GSTC argues the Court should consider the substantive arguments in the pending motion as a matter of judicial economy.
Service of process issued in the United States and intended for service in a foreign county is governed by the Hauge Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (" Hauge Convention"). 20 U.S.T. 361. The Hauge Convention allows for service by mail, if the receiving jurisdiction does not object. Water Splash, Inc. v. Menon , --- U.S. ----, 137 S.Ct. 1504, 197 L.Ed.2d 826 (2017). Australia does not object to service by mail but requires the service to be by registered mail. GSTC does not dispute that it failed to properly serve Jontra or ACE. For these reasons, the Court finds that under the Hauge Convention, GSTC failed to properly serve Jontra and ACE. As a result, this Court lacks personal jurisdiction over these parties and cannot make any other rulings related to these parties. Jontra and Ace's Motion to Dismiss (Doc. 16) is GRANTED and the attempted service on Jontra and Ace is QUASHED.
B. Defendants Quentin Morgan and Ewan Meldrum's Motion to Dismiss
Defendants Quinto Morgan ("Morgan") and Ewan Meldrum ("Meldrum") filed their motion to dismiss for lack of personal jurisdiction also based on improper service. (Doc. 35). Defendant Meldrum claims that he was improperly served because the service was attempted by mailing his documents, but not by registered mail. Additionally, Meldrum claims that GSTC failed to comply with the requirement for forwarding documents to the Central Authority. GSTC concedes that it failed to properly obtain service on Meldrum. (Doc. 55).
For these reasons, the Court agrees that Meldrum was not properly served because he was provided service by regular mail. For this reason, the Court lacks jurisdiction over Meldrum.
Defendant Morgan was personally served, but argues the service was ineffective because none of the documents he received suggested they were received by the Central Authority. In response, GSTC states that the documents were sent to a private process server, who personally served Morgan, but if the Court finds service was defective, then GSTC will re-serve Morgan.
While it appears that the use of the Central Authority is an option for service, service can also be made by any other internationally agreed means for accomplishing service. Under Australia law, personal service is an acceptable means for accomplishing service. Therefore, the Court finds GSTC properly served Defendant Morgan. Therefore, the Court considers Morgan's joinder in Ashton's Motion to Dismiss below.
Defendants Meldrum and Morgan's Motion to Dismiss and Quash Service is GRANTED as to Defendant Meldrum and DENIED as to Defendant Morgan on the issue of service.
*1204 C. John Dugald Mactaggart's Motion to Dismiss First Amended Complaint for Res Judicata based on Lack of Personal Jurisdiction
Defendant Mactaggart seeks dismissal based on issue preclusion, because the Court previously found that it did not have personal jurisdiction over Mactaggart in this action. (Ashton I at Doc. 111). Mactaggart argues that the issue of personal jurisdiction in this case is identical to the issue in Ashton I. GSTC responds that at the time the prior case was dismissed, no discovery had been allowed to GSTC. GSTC claims that new discovery received in a separate case provides new, critical jurisdictional facts showing Mactaggart was intimately involved in the conspiracy to destroy GSTC and confiscate its U.S. technology.
Standard for Issue Preclusion
"Res judicata doctrine encompasses two distinct barriers to repeat litigation: claim preclusion and issue preclusion." Park Lake Res. Ltd. Liab. v. U.S. Dep't Of Agr. , 378 F.3d 1132, 1135-36 (10th Cir. 2004) (citations omitted). "Claim preclusion bars a party from relitigating a claim or cause of action on which final judgment has been rendered." Id. (citations omitted). This case "concerns the other branch of preclusion doctrine-issue preclusion." Id.
In contrast to claim preclusion, issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim. See Dodge v. Cotter Corp. , 203 F.3d 1190, 1198 (10th Cir.2000) ("When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (quoting Ashe v. Swenson , 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) ) ). In general, issue preclusion applies when:
(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.
Park Lake Res. Ltd. Liab. , 378 F.3d at 1135-36.
A jurisdictional dismissal can have issue-preclusive effect.
It has long been acknowledged that "[t]he principles of res judicata apply to questions of jurisdiction as well as to other issues." American Surety Co. v. Baldwin , 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932). In particular, dismissals for lack of jurisdiction " 'preclude relitigation of the issues determined in ruling on the jurisdiction question.' " Matosantos Commercial Corp. v. Applebee's Int'l Inc. , 245 F.3d 1203, 1209 (10th Cir.2001) (quoting 18 Charles Alan Wright et al., Federal Practice and Procedure § 4436 (1981) ); see also 18 Wright, Miller & Cooper § 4418 at 468 ("The same question of jurisdiction ... cannot be reopened in a second action ...."); Restatement (Second) of Judgments § 12 cmt. c. at 119 ("When the question of the tribunal's jurisdiction is raised in the original action, in a modern procedural regime there is no reason why the determination of the issue should not thereafter be conclusive under the usual rules of issue preclusion.").
Id. at 1136. Additionally, the Tenth Circuit has explained that dismissal for lack of jurisdiction does not always bar another *1205 suit. Eaton v. Weaver Mfg. Co. , 582 F.2d 1250, 1256 (10th Cir. 1978). "Thus, suit may be brought again where a jurisdictional defect has been cured or loses its controlling force." Id. (citations omitted).
In this case, GSTC appears to argue that it was not provided a full and fair opportunity to discover facts that would support the Court's imposition of personal jurisdiction over Mactaggart. However, GSTC failed to appeal the Court's prior ruling and as a result, the jurisdictional ruling operates as res judicata. See Eaton , 582 F.2d at 1256 ( [t]he jurisdictional ruling not having been appealed, the prior ruling would operate as res judicata.).
GSTC attempts to argue that new and subsequent events create a new legal situation or alter the legal rights in relation to the litigation. GSTC points to suits filed by ACE, Jontra, and BA against GSTC in the Second Judicial District, Albany County, Wyoming, allegedly in furtherance of the conspiracy. However, the Court's prior ruling considered Mactaggart's role as director/owner of ACE, Jontra, and BA. Additionally, while GSTC has provided statements in Pope's affidavit regarding Mactaggart's actions directed to Wyoming, these allegations fail to establish a new legal situation or altered rights in relation to the previous litigation.[4]
If GSTC disagreed with the Court's prior ruling, or the denial of jurisdictional discovery, then GSTC should have appealed that ruling, rather than refiling the same claims against Mactaggart. The Court will not allow GSTC to relitigate the issue of personal jurisdiction through a new case at this time.
For all these reasons, the Court finds that Mactaggart's Motion to Dismiss (Doc. 11) is GRANTED.
D. Defendant Brisbane Angels Group, LTD's Motion to Dismiss
Defendant Brisbane Angels Group, LTD (BAG) also filed a motion to dismiss based on lack of personal jurisdiction or alternatively under the doctrine of forum non conveniens or because GSTC failed to state a claim against BAG. The Court will first consider the challenge to personal jurisdiction.
Standard to Dismiss for Lack of Personal Jurisdiction
In a motion to dismiss for lack of personal jurisdiction, the "[p]laintiff bears the burden of establishing personal jurisdiction over the defendant." OMI Holdings, Inc. v. Royal Ins. Co. of Canada , 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted). For the plaintiff to defeat a Rule 12(b)(2) motion to dismiss, the plaintiff need only make a "prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id.
In Wyoming, courts "are authorized by statute to exercise personal jurisdiction over defendants on any basis which is not inconsistent with the Wyoming or United States constitutions."
*1206 Black Diamond Energy Partners 2001-A Ltd. v. S & T Bank , 278 P.3d 738, 742-43 (Wyo. 2012). Therefore, the exercise of jurisdiction is permitted so long as it "does not offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution ...." Id. at 743. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " Burger King Corp. v. Rudzewicz , 471 U.S. 462, 471-72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citation omitted). Thus, for a court to have personal jurisdiction over a nonresident defendant, there must exist " 'minimum contacts' between the defendant and the forum state." OMI Holdings , 149 F.3d at 1090 (citations omitted). To satisfy the minimum contacts standard, a plaintiff may assert either specific or general jurisdiction over the defendant. See id. at 1091. However, if there is no specific or general jurisdiction, personal jurisdiction will nevertheless exist if the defendant consents to jurisdiction.
At issue in this case is specific jurisdiction. Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear Dunlop Tires Operations, S.A. v. Brown , 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (alteration in original). When a court has specific jurisdiction, it is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.' " Id. To establish specific jurisdiction, the defendant must have minimum contacts with the forum state. Minimum contacts "encompasses two distinct requirements: 'first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." Shrader v. Biddinger , 633 F.3d 1235, 1239 (10th Cir. 2011). Once the "purposefully directed" and "arising out of" requirements are met, the court must then "inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." Id. at 1240 (citation omitted).
BAG's Connections to Wyoming
BAG asserts that it is an Australian company, which does not maintain any commercial presence in Wyoming. BAG argues that while GSTC and WellDog made presentations to BAC for purposes of soliciting loans and investments, those contacts occurred in Australia and any loans or investments were the result of decision, channeled through separate entities. BAG claims it did not loan money to GSTC, it did not own stock in GSTC, and did not contact GSTC.
In response, GSTC claims that Brisbane Angels Nominees Pty Ltd, ("BAN") is a wholly owned subsidiary of BAG, sharing the same address and same registered agent. GSTC also claims that Mactaggart is the sole director of BAN and BAG and is therefore controlling both. GSTC also cites to the acceptance of jurisdiction in the Finance Notes signed by BAN.
"Companies conducting business through their subsidiaries can qualify as transacting business in a state, provided the parent exercises sufficient control over the subsidiary." Pro Axess, Inc. v. Orlux Distribution, Inc. , 428 F.3d 1270, 1278 (10th Cir. 2005) (citing Curtis Publ'g Co. v. Cassel , 302 F.2d 132, 137 (10th Cir.1962) ("[A] wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction *1207 of the state in which the activities occurred.") ).
The question then becomes the degree of control BAG exercised over BAN. GSTC has failed to provide evidence that BAN is working as the alter ego of BAG. Mactaggarrt appears to be the only director of BAN. (Doc. 40-1 [Ex. 2 - BAN Extract] ). However, GSTC's exhibits show that BAG has numerous directors. (Doc. 40-1 [Ex 3-BAG Extract] ). Therefore, GSTC's assertion that BAG and BAN are both being controlled solely by Mactaggart is without support in the record.
GSTC has failed to allege other facts to assert personal jurisdiction over BAG. Rather, GSTC asserts jurisdiction over BAG, through BAN's contacts, but fails to provide factual support for the argument that BAN was acting as BAG's alter ego.[5]
For all these reasons, the Court finds that BAG's Motion to Dismiss for Lack of Jurisdiction (Doc. 13) is GRANTED.
E. Defendants Simon Ashton, Kinabalu Australia Pty. Ltd., as Trustee for Kinabalu Australia Trust, and ProX Pty. Ltd.'s Motion to Dismiss
Defendants Ashton and Kinabalu filed a motion to dismiss based on issue preclusion of the Court's prior order finding this case was dismissed based on forum non conveniens grounds. (Doc. 18).
Issue Preclusion on Forum Non Conveniens
Defendants argue this case should be dismissed on issue preclusion based on the Court's earlier order dismissing this case on forum non conveniens grounds in Ashton I. In response, GSTC claims that since the time of the prior suit, Defendants have engaged in significant new conduct in furtherance of their collusive activities directed at GSTC's Wyoming operations. GSTC asserts this case has narrower causes of action and that the Court now has jurisdiction over all the parties, because GSTC has not included ProX as a Defendant. However, the Court has previously ruled that it does not have personal jurisdiction over BAG or Mactaggart.
As previously explained "issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." Park Lake Res. Ltd. Liab. , 378 F.3d at 1135 (citation omitted). "When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Park Lake Res. Ltd. Liab. , 378 F.3d at 1135 (citation omitted). "A plaintiff may not relitigate a forum non conveniens issue unless he can show some objective facts that materially alter the considerations underlying the previous resolution." Villar v. Crowley Mar. Corp. , 990 F.2d 1489, 1498 (5th Cir. 1993) (abrogated on other grounds by Marathon Oil Co. v. Ruhrgas , 145 F.3d 211 (5th Cir. 1998) ). The plaintiff "must do more than ask for a rebalancing of forum non conveniens considerations." Exxon Corp. v. Chick Kam Choo , 817 F.2d 307, 314 (5th Cir. 1987), (rev'd on other grounds, 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988) ).
GSTC claims that issue preclusion should not apply because it has narrowed *1208 its claims and has not sued ProX, a company over which the Court lacks jurisdiction and whose actions are governed by Australian law. The Court disagrees. In considering this matter the Court finds it is telling that GSTC's original state court Complaint in this case was virtually identical to the Amended Complaint in Ashton I , including the same causes of action and most of the same factual allegations. Once the case was removed to federal court, GSTC filed an Amended Complaint (Doc. 8). In the Amended Complaint, GSTC removed ProX Pty Ltd as a party, changed some of the causes of action, and included additional language about interfering with GSTC's United States business.
However, GSTC's attempt to claim this is some new and different lawsuit is not convincing. This action is substantially the same as Ashton I , with the same claims based on the same facts, against most of the same Defendants.
GSTC relies heavily on the fact that Jontra and BAN filed suit in Albany County District Court against the Financing Notes. However, the Court does not view the Albany County civil action seeking to collect on the Financing Notes as significantly altering this case. As the Court previously noted, GSTC has failed to cite to any case suggesting that submitting to specific jurisdiction for a contract action acts as a blanket acceptance of jurisdiction for any other civil action. Additionally, while Jontra and BAN are exercising their rights in Wyoming under the Financing Notes, the Financing Notes were also part of Ashton I , so this is not a new fact.
Additionally, GSTC claims the Amended Complaint contains different causes of action against parties over which this Court has jurisdiction. GSTC urges the Court to follow the roadmap laid out in a district court case from the Middle District of Florida, J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co. , No. 3:08CV31J32MCR, 2009 WL 55010, at *3 (M.D. Fla. Jan. 7, 2009). However, in following the roadmap and comparing the allegations and causes of actions in GSTC's Ashton I Amended Complaint to the Ashton II Amended Complaint, the Court finds there is no change in the material facts underlying the Court's prior judgment.
Simply put, the claims in the Amended Complaint in this case arise from GSTC's claims that Ashton and others engaged in self-dealing and collusive efforts to improperly take ownership and control of WellDog, to divert its assets, and cause injury to GSTC. A comparison of the Amended Complaints demonstrates that there are no objective facts that materially alter the considerations underlying the previous resolution.
The similarity of the cases is clear in considering the requested relief. GSTC seeks relief for conversion of a corporate opportunity. This claim was included in Ashton I (Ashton I at ¶ 293-300)[6] as the Third Claim for Relief but was titled tortious interference with contract expectancy. In Ashton II it can be found in the First Claim for Relief and is now titled Insider Transaction and Conversion of Corporate Opportunity (Ashton II at ¶¶ 297-305). The Second Claim for Relief in Ashton II is GSTC's claim for breach of fiduciary duties. While the language has been changed, it is still the same breach of fiduciary duty claim as the Second Claim for Relief in Ashton I (Ashton I at ¶¶ 262-287). Both Amended Complaints have a claim for tortious interference with contract as the Fourth Claim for Relief. Both are the same claim, even though the language *1209 has also been slightly changed to assert injury to GSTC. (Ashton I at ¶¶ 301-304, Ashton II at 338-341). In both Amended Complaints, the Fifth Claim for Relief is for Self Dealing and Unjust Enrichment (Ashton I at ¶¶ 310-316, Ashton II at ¶¶ 342-349). Again, the language has been modified to assert allegations related to GSTC's intellectual property, but it is the same claim, based on the same facts. The Sixth Claim for Relief in both Amended Complaints is for Civil Conspiracy. (Ashton I at ¶¶ 310-316, Ashton II at ¶¶ 350-355). The Seventh Claim for relief in both cases is for Lender Liability and Breach of Good Faith and Fair Dealing. (Ashton I at ¶¶ 317-325, Ashton II at ¶ 356-364). In this case, the claim is against Defendant Ashton, through his "alter ego" ProX, because GSTC has not included ProX as a party. However, it is the same claim based on the same acts. In both Amended Complaints the Eighth Claim for relief is Misappropriation of Trade Secrets and Resulting Unfair Business Practices and Unfair Competition. (Ashton I at ¶¶ 326-336, Ashton II at ¶¶ 365-374). These claims involve many of the same factual allegations. The Ninth Claim for relief in both cases is for Declaratory Judgment (Ashton I at ¶¶ 337-338, Ashton II at 375-376). Again, the language has been slightly modified, but it is the same claim based on the same facts. GSTC dropped its claim for temporary and permanent injunction, which was its Tenth Claim for Relief in Ashton I. However, in both cases, the final claim is for Setoff/Off Set of Damages Against Equity and Debt (Ashton I at ¶¶ 348-350, Ashton II at ¶¶ 377-379). For further demonstration of how this case is essentially the same case as Ashton I , the Defendants have extensively illustrated this point in their reply brief. (Doc. 53-3, 53-4, 53-5).
Using GSTC's suggested roadmap, the Court finds that GSTC failed to establish "objective facts that materially alter the considerations underlying the previous resolution." Villar , 990 F.2d at 1498. Rather, GSTC is asking the Court "for a rebalancing of forum non conveniens considerations", after it had a chance to slightly alter its claims to remove what it believed were the major considerations for the Court's earlier ruling. However, the Court has already found that these claims are properly pursued in Australia and that ruling is entitled to issue preclusion in this case.
Additionally, GSTC failed to address some of the Court's primary considerations in its prior order, specifically, that GSTC's conspiracy theory rests on the idea that Ashton planned to take control of WellDog and Mactaggart, Jontra, ACE and BAG to take control of GSTC. (Ashton II at ¶ 199). To achieve the conspiracy, GSTC alleged Defendants, including Ashton and his alter ego ProX[7] planned to foreclose on their venture debt to attain control of WellDog. (Id. at ¶¶212, 283). The basis of these allegations and claims still rely on ProX's ability to foreclose on the venture debt, an issue that is governed by Australian law.
GSTC's Amended Complaint still asserts claims related to actions against an Australian company (WellDog). GSTC's Amended Complaint does not change the fact that it formed WellDog in Australia, encountered all Defendants-in some capacity-for the benefit of WellDog, an Australian company, and a majority of the events in this case occurred in Australia. While GSTC has attempted to illuminate and highlight the damage done to GSTC in Wyoming and the United States (which is non-specific and does not support keeping the case in this district), these facts do not *1210 outweigh the competing facts that led the Court to determine Australia was the appropriate venue in the first instance. The private interest factors still weigh in favor of this case continuing in Australia.
Additionally, the public interest factors also weigh in favor of Australia. It remains undisputed that this case is based on a hostile takeover action of WellDog, GSTC's Australian subsidiary. It also remains undisputed that all Defendants reside in Australia and, therefore, a majority of the evidence for GSTC's claims is still located in Australia. In its motion to file a surreply and corresponding surreply, GSTC attempts to argue that this case has local interest because Ashton has sent documents to businesses and bankers in Wyoming. However, the attached email was dated September 18, 2018, after the Amended Complaint in this case, and those allegations are not part of the allegations in this case.
For these reasons, the Court finds that issue preclusion bars GSTC's attempt to relitigate the issues raised in Ashton I. Additionally, the Court finds that the same factors justifying the Court's earlier dismissal based on forum non conveniens are still present in this case. For these reasons, Defendants' Motion to Dismiss based on issue preclusion is GRANTED.
F. Motion for Sanctions
As part of their various motions, Defendants have asked the Court to impose sanctions on GSTC. Rather than responding to the motion for sanctions, GSTC asks the Court to stay any determination of sanctions until the claim of issue preclusion has been determined.
The Court is generally not inclined to impose sanctions when parties are pursuing legitimate, although unsuccessful, trial strategies. However, this case raises unique issues. Specifically, the Court is troubled by the fact that GSTC's original state court complaint (Doc. 2) was nearly identical to GSTC's Amended Complaint in Ashton I , with the notable exception of the class action claims and the exclusion of Blue Sky Group, Inc. The original state complaint included ProX as a party, despite this Court's prior ruling finding the Court lacked personal jurisdiction over ProX.
Defendants removed this case to federal court on June 18, 2018. (Doc. 1). Perhaps realizing that the Court would not look favorably on a Complaint with almost identical allegations and identical causes of action to a case it dismissed based on forum non conveniens, GSTC filed an Amended Complaint on July 6, 2018. The Court would note that if GSTC had reason to believe its claims were so fundamentally different or altered to avoid issue preclusion when they first filed in state court, those claims and facts should have been included in the state court complaint, not added once GSTC realized the case would be coming back to this Court.
However, in the Amended Complaint, GSTC altered some of the factual allegations, emphasizing the injury to GSTC's United State Operations based on Defendants actions. GSTC also included allegations related to Defendants new entity "Qteq", who was not included as a party. GSTC also provided more specific information about the involved transactions.
Many of the newly added allegations were likely available at the time GSTC filed Ashton I. Additionally, GSTC was certainly aware of these new allegations when it filed its Complaint in state court. Also, for unclear reasons, in its Amended Complaint GSTC renamed the various Defendant groups, so for example, the "Ashton Controlled Entities" became "Ashton/Ashton Trust" and the "Mactaggart Controlled Entities" became "Mactaggart Entities". Additionally, while GSTC claims *1211 it took out ProX as a party as justification for why the Court should not find issue preclusion, GSTC did not actually take out ProX or the allegations related to ProX. It just made ProX an "alter ego" of Ashton.[8] Also, after apparently being made aware of the distinction between BAG and BAN through the proceedings on the Financing Notes, GSTC failed to take steps to dismiss its claims against BAG, or replace it as a Defendant with BAN. Rather, the Amended Complaint generally refers to Brisbane Angels ("BA").
While GSTC claims the Amended Complaint materially altered the considerations underlying the previous resolution, the practical effect of GSTC's amendments was to make it more difficult for Defendants and the Court to parse through the Amended Complaint to determine whether GSTC was still asserting the same claims.
For these reasons the Court has serious concerns regarding GSTC's conduct in this case. Therefore, rather than denying Defendants' various claims for sanctions, the Court will require GSTC to respond to the motions for sanctions included in Defendants' motions on or before November 5, 2018. The Court will limit GSTC's response to ten (10) pages to address all the motions for sanctions. On or before November 19, 2018, Defendants may file any reply briefs limited to five (5) pages each, which should include the requested sanction. On or before December 3, 2018, GSTC may file a surreply of ten (10) pages, addressing only issues with the amount or type of requested sanctions.
CONCLUSION
For the reasons stated above, the Court Finds and Orders as follows:
IT IS ORDERED that Plaintiff's Motion for Remand (Doc. 20) is DENIED;
IT IS FURTHER ORDERED that John Dugald Mactaggart's Motion to Dismiss First Amended Complaint (Doc. 11) is GRANTED;
IT IS FURTHER ORDERED that Defendants Quentin Morgan and Ewan Meldrum's Motion to Dismiss (Doc. 35) is GRANTED IN PART as to Defendant Meldrum;
IT IS FURTHER ORDERED that Defendant Brisbane Angels Group, Ltd's Motion to Dismiss (Doc. 13) is GRANTED;
IT IS FURTHER ORDERED that Defendants Jontra Holding Pty and Associated Construction Equipment Pty. Ltd's Motion to Quash Service (Doc. 16) is GRANTED;
IT IS FURTHER ORDERED that Defendants Simon Ashton, Kinabalu Australia Pty. Ltd., Kinabalu Australia Trust, and ProX Pty. Ltd.'s Motion to Dismiss (Docs. 18) is GRANTED;
IT IS FURTHER ORDERED Plaintiff's Motion to File Surreply (Doc. 63) is GRANTED and the Court considered the surreply in determining this motion.
IT IS FURTHER ORDERED Plaintiff's Motion to Defer Briefing on Request for Sanctions (Doc. 40) is GRANTED. GSTC shall respond to the various motions for sanctions on or before November 5, 2018. GSTC's response is limited to a total of ten (10) pages to address all the motions for sanctions. Defendants shall file any reply brief on or before November 19, 2018. Defendants reply briefs are limited to five (5) pages each, including the requested sanction. GSTC may file a surreply on or before December 3, 2018. GSTC's reply brief shall not exceed ten (10) pages and shall only address issues *1212 related to the amount or type of requested sanctions.
IT IS FINALLY ORDERED that this case is DISMISSED WITHOUT PREJUDICE.

GSTC refers to WellDog Pty. Ltd. as WD Pty in its current Amended Complaint. The Court will use the name WellDog, which GSTC used in the earlier case, Gas Sensing Tech. Corp. v. Ashton et al. , 16-cv-272-F.

A second notice of default was issued on October 6, 2016, a third notice was issued on October 21, 2016, and a fourth notice was issued on October 26, 2016. (Id. at 32-33, ¶ 219).

The notice of default issued by Mactaggart was on behalf of Mactaggart, Jontra, and Associated Construction Equipment Pty. Ltd. ("ACE"). (Id. at 34, ¶ 226).

The Court would also note that none of the documents would change the Court's prior analysis regarding Mactaggart's contacts with Wyoming. The documents may show that Mactaggart was engaged in a scheme related to the Australian entity, WellDog. However, the allegations in this case are that GSTC actively sought out Australian investors, to help start an Australian company. There are no allegations that Mactaggart targeted GSTC as a Wyoming resident in the first instance. While GSTC claims Mactaggart chose to conduct business with GSTC in the forum (Wyoming), there is no evidence that Mactaggart conducted any activities directed to Wyoming related to the takeover of WellDog. Rather, Mactaggart's activities all occurred in Australia, involving Australian entities.

Additionally, the Court would note that while BAN consented to jurisdiction in state court in Albany County, it did not agree to jurisdiction in Wyoming for any other purpose than litigation under the Finance Notes. GSTC has failed to provide any case law that would suggested that specific jurisdiction for a contract action under a forum selection clause can create personal jurisdiction for other matters.

For ease of reference the Court will refer to the Amended Complaints in both cases as Ashton I and Ashton II. The Amended Complaint in Ashton I is located at Doc. 35 and the Amended Complaint for Ashton II is at Doc. 8.

As another example of how this is the same lawsuit, GSTC has removed ProX as a party, but still includes its actions, only now as an "alter ego" to Ashton.

GSTC could not completely remove ProX because it was ProX's actions in calling the notes (notes governed by Australian law), that form the foundation of GSTC's other complaints. It is very likely that ProX would be an indispensable party to this action.