**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GAS SENSING TECHNOLOGY CORP.,
a Wyoming company,

    Plaintiff - Appellant,

v.

SIMON ASHTON; KINABALU
AUSTRALIA PTY LTD, as Trustee for
KINABALU AUSTRALIA TRUST;
PROX PTY LTD; GRAEME
LINKLATER; LINKLATER FAMILY
TRUST; QUENTIN MORGAN; JOHN
DUGALD MACTAGGART; BRISBANE
ANGELS GROUP LTD.; JONTRA
HOLDINGS PTY LTD.; ASSOCIATED
CONSTRUCTION EQUIPMENT PTY
LTD; EWAN MELDRUM; and JOHN
DOES 1-20,

    Defendants - Appellees.

No. 18-8089
(D.C. No. 2:18-CV-00095-NDF)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **EBEL**, and **O'BRIEN**, Circuit Judges.
_____

    Plaintiff-Appellant Gas Sensing Technology Corp. (GSTC) is an

energy-focused technical services company based in Wyoming and having done

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

business in Australia through its Australian subsidiary, WellDog Pty Ltd (WellDog). This appeal involves the second federal court action involving GSTC's claims against the above-named Australian defendants who provided financing to or were employed by GSTC or WellDog. Both suits alleged that the defendants improperly attempted to take over ownership and control of WellDog and to misappropriate GSTC's intellectual property, trade secrets, and business opportunities. The district court dismissed the first action, concluding that several defendants were not subject to personal jurisdiction in Wyoming, that the claims against other defendants were more properly heard in Australia, and that some claims failed to state a claim because GSTC relied on group pleading, making it impossible to determine the specific allegations against each defendant. *Gas Sensing Tech. Corp. v. Ashton*, No. 16-CV-272-F, 2017 WL 2955353, at \*6, \*9, \*11–14, \*17 (D. Wyo. June 12, 2017) (*Ashton I*). No appeal was taken from the decision, but about a year later, GSTC initiated what eventually became the second federal action by refiling its claims in Wyoming state court. After defendants removed the case to federal court, the district court denied GSTC's motion to remand and granted the defendants' motion to dismiss the amended complaint on issue preclusion, *forum non conveniens*, and jurisdictional grounds. *Gas Sensing Tech. Corp. v. Ashton*, 353 F. Supp. 3d 1192, 1202–03, 1205, 1207, 1210–11 (D. Wyo. 2018) (*Ashton II*). Because GSTC did not appeal *Ashton I*, we review only the district court's order in *Ashton II*, and we affirm.[1]

---

[1] Our jurisdiction derives from 28 U.S.C. § 1291.

## BACKGROUND

The complex factual and procedural background of this case is summarized in detail in *Ashton I* and *II*, and we need not repeat it here. Instead, we provide only enough background to identify the parties and provide necessary context for our consideration of GSTC's claims on appeal.

GSTC formed WellDog in an effort to expand its energy services throughout Australia. To finance that effort and expand WellDog, GSTC sought private venture equity and debt from experts in the energy industry, including ProX Pty Ltd (ProX), an Australian entity controlled by Australian Simon Ashton. Between 2011 and 2014, ProX made loans to WellDog secured by promissory notes (the ProX Notes). Two other Ashton-controlled entities, Kinabalu Australia Pty Ltd, as Trustee for the Kinabalu Australia Trust (collectively Kinabalu), invested significant private venture equity in WellDog by purchasing shares of GSTC stock. In addition, two entities controlled by John Dugald Mactaggart—Jontra Holdings Pty Ltd (Jontra) and Associated Construction Equipment Pty Ltd (ACE)—lent money to WellDog. After those loans were transferred to and assumed by GSTC, GSTC issued promissory notes (Finance Notes) to Jontra and ACE. The Linklater Family Property Trust (Linklater Trust), Graeme Michael Linklater (Linklater), and non-party Meldrum Family Trust (Meldrum Trust) also provided private venture equity and debt to GSTC in exchange for GSTC Finance Notes, as did non-party Brisbane Angels Nominees Pty Ltd (BAN), an entity controlled by Mactaggart and related to defendant Brisbane Angels Group Ltd (BAG).

3

As a result of Kinabalu's equity investment in GSTC, Ashton was appointed as GSTC's director, and at his request Quentin Morgan was hired as its Chief Technology Officer. GSTC alleged that the Ashton and Mactaggart-controlled defendants conspired to take control of GSTC. It maintained that Ashton and Morgan improperly used their executive level positions to facilitate the takeover effort. GSTC also alleged that Linklater, who was an employee of GSTC and WellDog's Chief Financial Officer, used confidential financial and company information he acquired while working there to direct and assist the takeover effort. GSTC claimed Mactaggart, who briefly served as a director of WellDog, and another WellDog employee, Ewan Meldrum, also participated in the takeover plan.

In 2016, GSTC and WellDog encountered financial problems with creditors and suppliers. WellDog defaulted on the ProX Notes and GSTC defaulted on all the Finance Notes. Later that year, GSTC, WellDog, and GSTC's majority shareholder, The Blue Sky Group (Blue Sky) filed a tort action in Western Australia against Ashton, ProX, Kinabalu and others (the Australia Action) alleging that the defendants were improperly attempting to wrest control of WellDog from GSTC. One week later, GSTC and Blue Sky filed the complaint and later an amended complaint in *Ashton I*. The *Ashton I* defendants included Ashton, ProX, Kinabalu, Linklater, the Linklater Trust, Jontra, ACE, BAG, Morgan, Mactaggart, and Meldrum. The claims asserted in the Australia Action and *Ashton I* were similar and based on the same factual allegations.

4

The *Ashton I* defendants moved to dismiss GSTC's complaint on multiple grounds. While those motions were pending, WellDog's financial problems in Australia continued to mount and in mid-2017 its creditors resolved to wind up the company and liquidators were appointed as to WellDog in Australia. In addition, Jontra, ACE, and BAN filed suit against GSTC in Wyoming state court seeking to recover payment on the defaulted Finance Notes they held (the Jontra Collection Action). And the Linklater Trust, the Meldrum Trust, and several other creditors filed an action against GSTC in Wyoming state court in early 2018 to collect on their respective Finance Notes, which by that time had matured and gone into default (the Linklater Collection Action, and together with the Jontra Collection Action, the Wyoming Collection Actions).

In June 2017, the district court dismissed the *Ashton I* complaint in its entirety. It dismissed the claims against ProX, Mactaggart, and Meldrum for lack of personal jurisdiction, concluding that they lacked sufficient minimum contacts with the forum state (Wyoming). *Ashton I*, 2017 WL 2955353, at *6, *9–11. In so concluding, the court rejected GSTC's jurisdictional arguments based on corporate alter ego, surrogacy, and conspiracy theories, and denied its motion for jurisdictional discovery. *Id*. It dismissed the claims against Linklater, the Linklater Trust, Kinabalu, BAG, Jontra, and ACE, because GSTC's use of group pleading did not provide them with adequate notice of the specific claims against each of them and therefore did not meet the notice requirements of Fed. R. Civ. P. 8 or plead a plausible claim for relief under Fed. R. Civ. P. 12(b)(6). *Ashton I*, 2017 WL

5

2955353, at \*12–14. Finally, the court dismissed the claims against Ashton, Kinabalu, and Morgan under the *forum non conveniens* doctrine, holding that both private and public interests favored requiring GSTC to litigate its claims in Australia because (1) the Australia Action, which GSTC filed, provided an adequate alternative forum for resolving the parties' disputes, *id.* at \*15; (2) the ProX Notes, which the court concluded were "central" to GSTC's claims, contained Australian choice-of-law provisions and "the majority of this case [was] subject to Australian law" *id.*; and (3) the majority of the relevant evidence was located in Australia because the defendants all resided there and most of the events the claims were based on happened there, *id.* at \*16–17. We repeat, GSTC did not appeal that order.

Instead, about a year after the court dismissed *Ashton I*, GSTC filed what became *Ashton II* in Wyoming state court. The state court complaint was virtually identical to the *Ashton I* complaint. Specifically, it (1) named the same defendants, including ProX, Mactaggart and Meldrum, despite the court's conclusion in *Ashton I* that they were not subject to personal jurisdiction in Wyoming; (2) reasserted the same claims the court had dismissed on *forum non conveniens* grounds; and (3) used group pleading, which the court had concluded was insufficient to satisfy the Rule 8 and 12(b)(6) notice and pleading requirements. Ashton, Kinabalu, and ProX, with the other defendants' consent, removed the case to federal court, where it was assigned to the same judge who had presided over *Ashton I*.

GSTC then filed an amended complaint removing ProX as a named defendant but continuing to refer to it and issues relating to the ProX Notes in setting forth the

6

basis for its claims against the remaining defendants. It also filed a motion to remand *Ashton II* to Wyoming state court, arguing that the Finance Notes between it and Jontra, ACE, and BAG[2] contained a forum selection clause waiving their right to removal and, in the alternative, that the court should decline to exercise jurisdiction over this case because it raised purely state law claims that overlapped with those at issue in the Wyoming Collections Actions. The defendants opposed the motion to remand and moved to dismiss the complaint on issue preclusion, *forum non conveniens*, personal jurisdiction, lack of service, and group pleading grounds.

Meanwhile, the court in the Australia Action dismissed Blue Sky from the case and ordered GSTC to produce documents it claimed supported its case. The parties (including GSTC) later consented to the discontinuation of WellDog's claim against the Australian defendants because it had been forced into receivership. And, while the motions to dismiss *Ashton II* were pending, GSTC voluntarily discontinued the Australia Action against all defendants except ProX.

Soon thereafter, the district court in *Ashton II* denied GSTC's motion to remand and granted defendants' motions to dismiss. 353 F. Supp. 3d at 1211. With respect to the remand motion, the court determined that the language in the Finance Notes was a permissive forum selection clause, not a waiver of the right to remove, and that jurisdictional abstention was not warranted because the *Ashton II* complaint raised more claims and involved more defendants (including foreign defendants) than

<hr>

[2] As noted above and discussed more fully below, BAN, not BAG, held Finance Notes.

7

did the state law claims against the limited group of defendants in the Wyoming Collections Actions. *Id*. at 1201–02. It also decided issue preclusion barred GSTC from relitigating matters that had been decided in *Ashton I*, including the personal jurisdiction, *forum non conveniens*, and jurisdictional discovery rulings described above. *Id*. at 1205, 1210. In short, it explained: if GSTC disagreed with those prior rulings it should have appealed from them "rather than refiling the same claims" in a new lawsuit. *Id*. at 1205. In so concluding, the court rejected GSTC's arguments that its claims were not barred because it both presented new evidence to support them and narrowed its claims by dismissing ProX, which GSTC conceded was not subject to the court's jurisdiction. *Id*. at 1207–08. It also concluded the same public and private factors justifying dismissal of *Ashton I* based on *forum non conveniens* were still present in *Ashton II*. *Id*. at 1209–10. And it dismissed GSTC's remaining claims on personal jurisdiction grounds, because BAG did not have the requisite minimum contacts with Wyoming, *id*. at 1207, and that the claims against Jontra, ACE, and Meldrum failed for lack of service of process, *id*. at 1202–03.

## DISCUSSION

On appeal, GSTC challenges most of the district court's rulings in *Ashton II*,[3] and in so doing, also challenges some of the rulings in *Ashton I*. We will not consider GSTC's arguments regarding *Ashton I* and reject its attacks on *Ashton II*.

---

[3] Because GSTC does not adequately raise and pursue challenges to the district court's dismissal of the claims against Morgan and Meldrum, we do not review those rulings. *Bronson v. Swenson*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[T]he omission

8

## I.      Denial of Motion to Remand

GSTC claims its motion to remand should have been granted. Specifically, it relies on a provision it characterizes as a mandatory forum selection clause in the Finance Notes held by Jontra, ACE, and BAG (really non-party BAN) waived their right to removal and, because removal requires unanimity among defendants,[4] invalidated the other defendants' consent to removal. We disagree.[5]

The meaning and enforceability of a contractual forum selection clause are questions of law that we review de novo. *K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 497 (10th Cir. 2002); *see also Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 320 (10th Cir. 1997) (applying a de novo standard in reviewing a district court's ruling on a motion to remand based on a contractual forum selection clause).

The contracts at issue here—the Finance Notes held by Jontra, ACE, and BAG—are governed by Wyoming law, which requires us to construe the Finance

---

of an issue in an opening brief generally forfeits appellate consideration of that issue.").

[4] *See* 28 U.S.C. §§ 1441(a), 1446(a); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998).

[5] GSTC also argued in its motion to remand that the district court should decline to exercise jurisdiction under the *Colorado River* doctrine, which allows a federal court to dismiss or stay a federal action in deference to a pending duplicative state court proceeding. *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (referring to *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). The district court rejected GSTC's argument, concluding that the removed federal action and the state court collection actions were not duplicative. *Ashton II*, 353 F. Supp. 3d at 1202. Because GSTC did not challenge that ruling on appeal, we do not address it.

9

Notes using general principles of contract interpretation, including that our goal in interpreting the contracts is to ascertain and give effect to the parties' intent and that we give the words used their plain and ordinary meaning. *Sutherland v. Meridian Granite Co.*, 273 P.3d 1092, 1095 (Wyo. 2012).

The Wyoming Supreme Court has enforced mandatory forum selection clauses. *Durdahl v. Nat'l Safety Assocs., Inc.*, 988 P.2d 525, 527–29 (Wyo. 1999) (Wyoming district court properly declined to exercise jurisdiction where forum selection clause provided that the parties "agree[d] that any and all claims involving this agreement shall be brought solely in the courts of Shelby County[,] Tennessee" (internal quotation marks omitted) (second alteration in original)). But it has also recognized that a provision consenting to jurisdiction is not the same as a mandatory forum selection clause. *See Venard v. Jackson Hole Paragliding, LLC*, 292 P.3d 165, 169–70, 173 (Wyo. 2013) (whether third-party beneficiaries could enforce contractual forum selection clause depended on whether they were bound by contract based on their relationship to signatory, not on their consent in separate contract to jurisdiction in forum state); *see also Crites v. Alston*, 837 P.2d 1061, 1067–69 (Wyo. 1992) (jurisdiction retention provision in divorce decree did not constitute forum selection clause).

Wyoming law drawing a distinction between forum selection clauses and jurisdictional concessions is consistent with our decisions explaining the difference between mandatory and permissive forum selection clauses: "[m]andatory forum selection clauses contain clear language showing that jurisdiction is appropriate only

10

in the designated forum," whereas "permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *Excell*, 106 F.3d at 321 (internal quotation marks and brackets omitted).  An agreement to submit to jurisdiction in a particular state's court or that venue is proper there is thus a permissive, not a mandatory, forum selection clause.  *Id*.; *see also Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc*., 428 F.3d 921, 927 (10th Cir. 2005) (a forum selection clause specifying only jurisdiction will not be enforced as a mandatory forum selection unless it includes "some additional language indicating the parties' intent to make venue exclusive").

Where a contract's forum selection clause permits but does not require state court venue, it does not waive the parties' right to remove to federal court.  *K & V*, 314 F.3d at 500–01 (district court removed case because it erroneously construed a forum selection clause referring to jurisdiction in non-exclusive terms to be mandatory).  To constitute a waiver of the right to remove, the agreement must not only identify a specific venue but also include language requiring the parties to resolve disputes in a specific court.  *See Am. Soda*, 428 F.3d at 927 (clause consenting to state court jurisdiction and selecting the state courts as the "exclusive forum" waived right to remove to federal court (internal quotation marks omitted)).  That is so because waiver of the statutory right to removal "must be clear and unequivocal," *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1098 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 983 (2018); *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992).

11

The Finance Notes provided: "[i]f there is a lawsuit, [the parties] agree to submit to the jurisdiction of the courts of Albany County, the State of Wyoming, United States." Aplt. App., Vol. 4 at 422, 425, 428, 431, 434 (exemplar Finance Notes attached to Br. in Supp. of Pl.'s Mot. to Remand). The chosen language, like the language at issue in *K & V*, "refers only to jurisdiction and does so in non-exclusive terms," 314 F.3d at 500, and the Finance Notes contain no additional language evincing an intent to litigate only in Wyoming state court. Accordingly, these defendants' agreement to submit to jurisdiction in Wyoming did not constitute a mandatory forum selection clause that clearly and unequivocally waived their right to remove to federal court, and the district court properly denied GSTC's motion to remand. *See id.*

## II.     Dismissal of Claims Against Mactaggart

GSTC next argues the district court erred in dismissing its claims against Mactaggart on issue preclusion and lack of personal jurisdiction grounds. Specifically, it claims that issue preclusion does not apply here because GSTC alleged new facts in the *Ashton II* complaint supporting the court's exercise of jurisdiction over Mactaggart. We are not persuaded.

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). With that standard in mind, a review of

12

additional background information (contained in the record) puts GSTC's argument in context and justifies the district court's reasoning.

In dismissing GSTC's claims against Mactaggart for lack of personal jurisdiction, the court in *Ashton I* rejected GSTC's arguments that (1) he consented to Wyoming's jurisdiction because the companies he controlled (Jontra, ACE, and BAG) consented to Wyoming's jurisdiction in the Finance Notes; and (2) he was the alter-ego of those companies and therefore had sufficient minimum contacts with Wyoming to justify the court's exercise of jurisdiction over him individually. 2017 WL 2955353, at *10–11 (citing *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1526–27 (10th Cir. 1987)). The *Ashton I* court held GSTC was not entitled to jurisdictional discovery because it failed to explain why such discovery was necessary and how the lack of discovery would affect the outcome of the case. *Id.* at *11; *see also Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 & n.11 (10th Cir. 2010) (the party seeking jurisdictional discovery has the burden of demonstrating entitlement to and prejudice from the denial of discovery).

The allegations in the *Ashton II* complaint supporting jurisdiction over Mactaggart were virtually identical to the jurisdictional allegations in the *Ashton I* complaint and the allegations against him were essentially the same. But the *Ashton II* complaint made new factual allegations about the Mactaggart-controlled defendants' filing of the Jontra Collection Action in Wyoming state court and about

13

Mactaggart's involvement as their director/owner in the alleged conspiracy to take control of GSTC and misappropriate its technology.

Mactaggart moved to dismiss the claims against him, arguing that he was not subject to jurisdiction in Wyoming and that GSTC's failure to appeal the *Ashton I* court's jurisdictional determination barred it from relitigating that issue. Relying on its new factual allegations, GSTC maintained that issue preclusion did not apply because the factual and legal issues regarding jurisdiction over Mactaggart had changed. The district court disagreed, noting that it had already considered Mactaggart's role in the companies he controlled and that none of the new factual allegations or supporting documents changed its prior analysis of his contacts with Wyoming, either individually or through his entities:

> The [new allegations] may show that Mactaggart was engaged in a scheme related to the Australian entity, WellDog. However, the allegations in this case are that GSTC actively sought out Australian investors, to help start an Australian company. There are no allegations that Mactaggart targeted GSTC as a Wyoming resident in the first instance. While GSTC claims Mactaggart chose to conduct business with GSTC in the forum (Wyoming), there is no evidence that Mactaggart conducted any activities directed to Wyoming related to the takeover of WellDog. Rather, Mactaggart's activities all occurred in Australia, involving Australian entities.

*Ashton II*, 353 F. Supp. 3d at 1205 & n.4. The court decided the new allegations "fail[ed] to establish a new legal situation or altered rights in relation to [*Ashton I*]." *Id*. at 1205.

We review its order de novo. *See Campbell v. City of Spencer*, 777 F.3d 1073, 1077 (10th Cir. 2014) (reviewing application of issue preclusion de novo); *Dudnikov*

14

*v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (reviewing dismissal of complaint for lack of personal jurisdiction de novo).

The doctrine of issue preclusion "prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit." *In re Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009). As the Supreme Court put it, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Issue preclusion applies when:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior action, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000).

A dismissal for lack of jurisdiction "preclude[s] relitigation of the issues determined in ruling on the jurisdiction question." *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 (10th Cir. 2001) (internal quotation marks omitted). We have recognized that, under the curable-defect doctrine, a jurisdictional dismissal does not bar another suit if the jurisdictional defect has been cured or loses its controlling force. *Park Lake Res. Ltd. Liab. Co. v U.S. Dep't of Agric.*, 378 F.3d 1132, 1137 (10th Cir. 2004); *see also Montana v. United States*, 440 U.S. 147, 159 (1979) ("[C]hanges in facts essential to a judgment will render [issue preclusion]

15

inapplicable in a subsequent action raising the same issues."). "But the change in circumstances that cures the jurisdictional defect must occur subsequent to the prior litigation." *Park Lake*, 378 F.3d at 1137. The rule requiring presentation of material post-litigation facts in order to overcome prior jurisdictional determinations is consistent with the principles underlying issue preclusion, because it avoids the expense, vexation and inefficiency of "'allow[ing] a plaintiff to begin the same suit over and over again in the same court, each time alleging additional facts that the plaintiff was aware of from the beginning of the suit, until it finally satisfies the jurisdictional requirements.'" *Id.* at 1138 (quoting *Magnus Elecs., Inc. v. La Republica Argentina*, 830 F.2d 1396, 1401 (7th Cir. 1987) (curable-defect exception does not allow party to rely on facts that were previously available to avoid preclusive effect of prior jurisdictional determination)).

Contesting the first element of issue preclusion—that the issue previously decided is identical with the one presented in the subsequent action—and invoking the curable-defect exception, GSTC claims it alleged sufficient new facts about the alleged conspiracy between Mactaggart, the companies he controlled, and the other defendants to overcome issue preclusion.[6] But the new allegations it relies on to bolster its conspiracy/alter-ego theories in support of jurisdiction over Mactaggart do

---

[6] We do not consider GSTC complaints about the *Ashton I* court's rejection of its conspiracy and alter-ego theories in support of jurisdiction over Mactaggart because our review here is limited to the question whether the *Ashton II* court erred in concluding that issue preclusion barred relitigation of those claims. If it disagreed with the *Ashton I* court's rulings, it should have appealed.

16

not involve post-litigation events that could overcome issue preclusion. Instead, as the district court found, and GSTC does not dispute, the facts it now relies upon pre-dated the dismissal of the complaint in *Ashton I*. As we explain below, its arguments about lack of access to that information during the *Ashton I* litigation fail. Presenting previously available facts in a new complaint does not constitute a "change in circumstances" that can avoid the preclusive effect of a jurisdictional determination in an earlier action. *Park Lake*, 378 F.3d at 1137. Consequently, the jurisdictional issue before us is substantively the same as that raised and decided in *Ashton I,* and it cannot be relitigated. *See id.* at 1137–38.

The out-of-circuit case GSTC relies upon to support its "sufficient new facts" argument does not help its cause. In that case, the Eighth Circuit concluded that a state appellate court's determination of a personal jurisdiction issue decided in the plaintiff's first suit did not bar relitigation of the issue in his second suit because the defendant raised the issue in the first suit in a mid-trial motion for directed verdict, the trial court did not make any jurisdictional fact findings in denying the motion, and the appellate court's ruling "shed[] little if any light on the different legal issue whether [that state] had personal jurisdiction over [the defendant] when the second suit was commenced" some four years later. *Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1113 (8th Cir. 1999). Here, in contrast, Mactaggart and the other defendants moved to dismiss shortly after the *Ashton I* complaint was filed, the parties had ample opportunities to develop their factual and legal arguments, and the court made detailed factual findings supporting its jurisdictional determinations. Thus, unlike

17

the court in *Pohlman*, the court in *Ashton II* fully understood the factual and legal landscape when it concluded that the jurisdictional issue was substantively the same despite GSTC's new factual allegations. Moreover, *Pohlman*'s holding was based on law consistent with ours—that issue preclusion does not bar relitigation of a jurisdictional issue when "*subsequent events* create a new legal situation or alter the legal rights or relations of the litigants"—and recognized that the lack of factual development in the first case made it impossible for the court in the second case to determine whether subsequent events may have changed the jurisdictional analysis. *Id*. (emphasis added, ellipsis and internal quotation marks omitted). That is simply not the case here, both because the *Ashton I* court thoroughly analyzed the issue and because this case does not involve material events that occurred after *Ashton I* was decided. The "new" facts about Mactaggart's pre-*Ashton I* activities that GSTC claims were directed at Wyoming may be new to GSTC, but they do not involve post-litigation events.[7]

In a related claim contesting the fourth element of issue preclusion—that the party who suffered the adverse ruling in the first case had a full and fair opportunity to litigate the issue—GSTC complains that the denial of jurisdictional discovery in *Ashton I* deprived it of the ability to present jurisdictional evidence against

---

[7] In ruling on defendants' motion for sanctions against GSTC, the district court indicated that it was "troubled" by the fact that the substance of GSTC's original complaint in *Ashton II* "was nearly identical" to the *Ashton I* complaint and that "[m]any of the newly added allegations were likely available at the time GSTC filed *Ashton I*." *Ashton II*, 353 F. Supp. 3d at 1210.

18

Mactaggart (including the additional facts it alleged in the *Ashton II* complaint) in that litigation. But we agree with the district court's conclusion that if GSTC disagreed with the *Ashton I* court's adverse discovery ruling, its remedy was to appeal that ruling, not to challenge it in the guise of a defense to issue-preclusion in a subsequent lawsuit. Accordingly, we decline to address whether the *Ashton I* court abused its discretion in denying GSTC's request for jurisdictional discovery.

### III. Dismissal of Claims Against Jontra and ACE

*Ashton I* and *II* dismissed the claims against Jontra and ACE for different reasons: *Ashton I* dismissed them for failure to state a claim based on GSTC's improper use of group pleading, 2017 WL 2955353, at *12; and *Ashton II* dismissed them for lack of personal jurisdiction because GSTC failed to properly serve those defendants, who are both Australian residents, 353 F. Supp. 3d at 1203. Although GSTC's appellate briefs repeatedly suggest the district court erroneously concluded it lacked jurisdiction over Jontra and ACE, it cannot challenge the *Ashton I* court's ruling in this appeal, and it does not dispute the correctness of the *Ashton II* court's lack-of-proper-service determination. We thus do not address either of those rulings here and reject GSTC's undeveloped and conclusory jurisdictional arguments as to Jontra and ACE.

### IV. Dismissal of Claims Against BAG

We also reject GSTC's contention that BAG had sufficient contacts with Wyoming to trigger the Court's jurisdiction.

The plaintiff generally has the burden of establishing personal jurisdiction over the defendants, but when, as here, a court rules on a motion to dismiss based on the parties' pleadings and attached affidavits without holding an evidentiary hearing, the plaintiff can meet its burden with only a prima facie showing. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). We review a district court's dismissal of a complaint for lack of personal jurisdiction de novo. *Dudnikov*, 514 F.3d at 1070. In determining whether the plaintiff met its burden, we accept all well-pled factual allegations as true and view them in the light most favorable to the plaintiff. *See AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

As pertinent here, in order for a Wyoming court to exercise personal jurisdiction over a nonresident, the defendant must, at a minimum, have sufficient contacts with the state that it "should reasonably anticipate being haled into court there." *Bartile Roofs,* 618 F.3d at 1159–60 (internal quotation marks omitted). The minimum contacts test "encompasses two distinct requirements: first, that the out-of-state defendant must have purposefully directed its activities at residents of the forum state, and second, that the plaintiff's injuries must arise out of defendant's forum-related activities." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (internal quotation marks omitted).

The purposeful availment inquiry requires us to examine both the "quantity *and* quality" of the defendant's contacts with Wyoming to determine whether they "create a substantial connection" with Wyoming. *Bartile Roofs*, 618 F.3d at 1160

20

(internal quotation marks omitted). Merely entering into a contract with a company located in the forum state "is not enough on its own" to subject a defendant company to jurisdiction in that state. *Pro Axess, Inc. v. Orlux Distribution, Inc*., 428 F.3d 1270, 1277 (10th Cir. 2005). But "creat[ing] continuing relationships and obligations with citizens of [the forum] state [will] subject" a company to jurisdiction there. *Id*. (internal quotation marks omitted). And "conducting business through [a] subsidiar[y] can qualify as transacting business in a state, provided the parent [company] exercises sufficient control over the subsidiary." *Id*. at 1278 (citing *Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir. 1962) (recognizing that when a wholly owned subsidiary's activities as an agent of its parent company "are of such a character as to amount to doing business of the parent," the parent is subject to jurisdiction in the state where the activities occurred)).

Here, GSTC claims BAG—an Australian company that never lent money to or held stock in GSTC or WellDog and never did business in Wyoming—is subject to jurisdiction in Wyoming through its wholly-owned subsidiary and alter-ego, BAN, which submitted to Wyoming jurisdiction in the GSTC Finance Notes it held and was one of the plaintiffs in the Jontra Collection Action in Wyoming state court. In support of its alter-ego theory, GSTC alleges: (1) Mactaggart controlled both companies (he was the sole director of BAN and one of several directors of BAG); (2) BAN and BAG had the same address as Jontra and ACE, two other Mactaggart-controlled entities; and (3) the BAN/BAG corporate structure was unclear and GSTC was confused about which of them held the Finance Notes.

21

But the district court concluded that these factual allegations were insufficient to establish that BAN was acting as BAG's alter ego. *Ashton II*, 353 F. Supp. 3d at 1206–07. We agree that Mactaggart's involvement in both entities, their common mailing address, and GSTC's claimed confusion about their corporate structure—and thus the identity of GSTC's lender[8]—do not establish a "unity of interests and ownership" between BAN and BAG. *Ten Mile Indus. Park*, 810 F.2d at 1527.[9] Nor do these facts undermine BAN's status as a valid corporate entity separate from BAG such that a Wyoming court could reasonably conclude that a foreign corporation with no connection to Wyoming and no involvement in the events giving rise to the litigation nonetheless "purposefully availed [itself] of the privilege" of doing business in Wyoming and should "anticipate being haled into court" there, *id.* at 1526; *see also Ashton I*, 2017 WL 2955353, at *11 (concluding that similar evidence

---

[8] We note that the district court questioned the sincerity of GSTC's claimed confusion about the distinction between BAN and BAG, noting that it had "serious concerns" about GSTC's "conduct in this case," including the fact that despite being "aware of the distinction between the two entities through the proceedings on the Financing Notes, GSTC failed to take steps to dismiss its claims against BAG, or replace it as a Defendant with BAN," and referred instead to "Brisbane Angels (BA)." *Ashton II*, 353 F. Supp. 3d at 1211 (internal quotation marks omitted).

[9] Under Wyoming law (1) a corporation will not be considered the alter ego of the person who controls it unless "there is such a unity of interest and ownership that" adhering to "the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice"; and (2) jurisdiction over a corporation's officers and directors "may not be predicated on jurisdiction over the corporation itself" and "must be based on their individual contacts with the forum state" unless "the corporation is not a viable one and the individuals are . . . using the corporate form as a shield." *Ten Mile Indus. Park*, 810 F.2d at 1526–27 (internal quotation marks omitted).

22

was insufficient to support GSTC's alter-ego theories about Mactaggart and the Mactaggart-controlled defendants).[10]

## V. Dismissal of Claims Against Ashton Defendants

GSTC's final claim is that issue preclusion does not bar relitigation of the claims against Ashton and the Ashton-controlled defendants following *Ashton I*'s dismissal of those claims on *forum non conveniens* grounds. More specifically, it maintains that the *forum non conveniens* issue should not be res judicata because GSTC narrowed the facts, claims, and parties involved so that the claims asserted in *Ashton II* involve only the defendants' conduct directed at GSTC (as opposed to its Australian subsidiary) and Australian law no longer applies. We disagree, because the differences between the *Ashton I* and *Ashton II* complaints do not change the fundamental *forum non conveniens* question common to both cases.

"A plaintiff may not relitigate a *forum non conveniens* issue unless he can show some objective facts that materially alter the considerations underlying the previous resolution." *Villar v. Crowley Mar. Corp.*, 990 F.2d 1489, 1498 (5th Cir. 1993) (internal quotation marks omitted), *abrogated on other grounds by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998) (en banc), *rev'd*, 526 U.S. 574 (1999); *see also* 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper,

---

[10] We decline to address GSTC's argument that instead of dismissing the claims against BAG, the district court should have substituted BAN or required that it be joined as a party. GSTC did not seek substitution or joinder below and we will not consider "secondary, back-up theories . . . mounted for the first time" on appeal, *Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1233 (10th Cir. 1997).

23

Federal Practice and Procedure Juris. § 4436 (3d ed., Aug. 2019 update) (*forum non conveniens* issue cannot be relitigated if "the issue actually remains the same").

Thus, the plaintiff must do more than ask for a rebalancing of *forum non conveniens* considerations. *Pastewka v. Texaco Inc.*, 565 F.3d 851, 854 (3rd Cir. 1977).

Here, GSTC maintains that the *forum non conveniens* issue in the two cases is materially different because the *Ashton II* complaint (1) "eliminated" the claims regarding defendants' alleged effort to take control of its Australian subsidiary WellDog, Aplt. Br. at 5, which was "forced into receivership and sold" after *Ashton I* was decided, *id*. at 24; (2) "narrowed" the claims to focus on defendants' "ongoing conspiracy . . . to destroy" "GSTC's business in the United States," *id.* at 5, 24; and (3) took Australian law out of the analysis by "omitting" the claims involving the ProX Notes, which are governed by Australian law, and against ProX, which is not subject to jurisdiction in Wyoming,[11] *id*. at 5, 25.

But these changes are superficial and do not materially change the *forum non conveniens* question. As the district court found after comparing the factual allegations, claims, and relief sought in both cases, despite GSTC's modifications to the amended complaint, *Ashton II* "is substantially the same as *Ashton I*, with the same claims based on the same facts, against most of the same Defendants."

---

[11] Although GSTC deleted ProX as a party and from the caption of the amended complaint, the district court included ProX in the dismissal order, *Ashton II*, 353 F. Supp. 3d at 1211, and the clerk of the court included it in the judgment dismissing the case.

24

353 F. Supp. 3d at 1208.[12]  The court explained that, despite the focus on defendants'

actions directed at GSTC instead of WellDog, the claims in *Ashton II*, like those in

*Ashton I*, "arise from GSTC's claims that Ashton and others engaged in self-dealing

and collusive efforts to improperly take ownership and control of WellDog, to divert

its assets, and cause injury to GSTC," *id.* at 1208.

With respect to the elimination of ProX as a party, the district court observed

that GSTC's conspiracy theory in both cases

> rests on the idea that Ashton planned to take control of WellDog
> and Mactaggart, Jontra, ACE and BAG to take control of GSTC.
> To achieve the conspiracy, GSTC alleged Defendants, including
> Ashton and his alter ego ProX planned to foreclose on their
> venture debt to attain control of WellDog.  The basis of these
> allegations and claims still rely on ProX's ability to foreclose on
> the venture debt, an issue that is governed by Australian law.

*Id*. at 1209 (citations and footnotes omitted).  Thus, "GSTC did not actually take out

ProX or the allegations related to ProX.  It just made ProX an 'alter ego' of Ashton."

*Id*. at 1211.  Indeed, "GSTC could not completely remove ProX" from the complaint

(and thus the *forum non conveniens* analysis) because ProX's decision to call in the

ProX Notes is at the heart of GSTC's allegations, which means that resolution of

GSTC's claims still turns on whether, under Australian law, ProX improperly

enforced the ProX Notes.  *Id*. at 1211 n.8.  Thus, the district court noted, it is "very

---

[12] In the district court, GSTC also claimed the filing of the Wyoming
Collection Actions changed the *forum non conveniens* analysis in *Ashton II*.  But the
court rejected that argument, and because GSTC did not pursue it on appeal, we do
not address it.

likely that ProX would be an indispensable party to" *Ashton II* if it survived the motion to dismiss. *Id.*

Based on our de novo review of the relevant pleadings, we agree with the district court's conclusions that the *forum non conveniens* issue presented in *Ashton II* was substantially the same as the one presented in *Ashton I*, *id.* at 1208, and that GSTC failed to show "'objective facts that materially alter the considerations underlying the previous resolution,'" *id.* at 1209 (internal quotation marks omitted). Accordingly, we conclude the district court properly dismissed the claims against Ashton and the Ashton-controlled entities on issue preclusion grounds.

In so concluding, we reject GSTC's argument that the district court failed to give proper deference to GSTC's choice of forum. We recognize that "there is ordinarily a strong presumption in favor of" hearing the case in the plaintiff's chosen forum, but that presumption can be overcome "when the private and public interest factors clearly point towards trial in" a different forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Thus, the plaintiff's choice of forum is just one factor in the *forum non conveniens* analysis, and the court concluded in *Ashton I* that GSTC's preference for Wyoming as the forum was outweighed by the private and public interests favoring resolution of its claims in Australia. 2017 WL 2955353, at *14–17. GSTC did not appeal that determination, and we will not review it here. Accordingly, we decline to consider GSTC's related argument that "applying the *forum non conveniens* test to the *Ashton II* complaint warrants denial of" the motion to dismiss. Aplt. Br. at 26 (capitalization omitted and italics added). This argument

26

merely seeks a rebalancing of the *forum non conveniens* factors, an issue we have concluded GSTC is barred from relitigating.  *See Pastewka*, 565 F.3d at 854.

## CONCLUSION

The district court's order is affirmed.  We deny GSTC's Motion to Take Judicial Notice of 2019 jury verdicts and other documents related to the Wyoming Collection Actions, because they do not bear directly on our disposition of this appeal from a 2018 dismissal order that was based largely on the preclusive effect of an unappealed 2017 judgment.  *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (court has discretion to judicially notice publicly-filed records in certain other courts "concerning matters that bear directly upon the disposition of the case at hand").

Entered for the Court


Terrence L. O'Brien
Circuit Judge